**In re the Petition for DISCIPLINARY AC-TION AGAINST John P. VITKO, an Attorney at Law of the State of Minnesota.**

**No. C6–91–399.**

Supreme Court of Minnesota.

June 30, 1994.

Marcia Johnson, Director, Office of Lawyers Professional Responsibility, Martin A. Cole, Asst. Director, St. Paul, for appellant.

Joe A. Walters, Robert A. Brunig, O'Connor & Hannan, Minneapolis, for respondent.

OPINION

PER CURIAM.

John P. Vitko comes before this court as respondent in disciplinary proceedings for the second time. In 1991 he was publicly reprimanded for improperly handling a bonus paid by Specialty Manufacturing Company. In late 1984 when Dorsey & Whitney informed Vitko that his partnership was being terminated effective June 30, 1985, Vitko instructed Specialty Manufacturing to withhold his entire 1984 bonus as taxes. Pursuant to his agreement with the law firm, Vitko was required to assign all salary and bonus paid him by Specialty Manufacturing to the firm. Vitko had regularly assigned only net salary and bonus without disclosing to the law firm that income taxes and FICA taxes, which he claimed as a credit on his personal income taxes, had been withheld; and the effect of his instructions with respect to the 1984 bonus was to avoid payment of any part of the bonus to the firm. *In re Vitko,* 467 N.W.2d 605 (Minn.1991). Now Vitko is before the court again charged with additional misconduct, including the fraudulent concealment of the existence and effect of a trust amendment changing a revocable trust to an irrevocable trust (in violation of Rules 1.4(b) and 8.4(c), Minnesota Rules of Professional Conduct); representing a client in matters involving a conflict of interest without advising the client to seek the advice of independent counsel (in violation of Rules 1.8(a) and 1.8(c), Minnesota Rules of Professional Conduct); and charging unreasonable and excessive fees (in violation of Rule 1.5(a), Minnesota Rules of Professional Conduct).

Since his admission to the bar in 1955, John P. Vitko has been continuously engaged in the practice of law, chiefly in the areas of estates and trusts and the management of closely-held business corporations. Vitko was a co-trustee of trusts created by William and Edna Boss and was an officer and director of Specialty Manufacturing Company, the Boss family business begun by William. In 1968 Vitko began acting as lawyer for William's and Edna's son, Harlan Boss.

Harlan Boss was for many years a well-known interior decorator and designer. He was an individual collector of art works, including his own original watercolors and paintings, and of the china, crystal, silver and other furnishings which graced his 33-room Victorian home in St. Paul. Vitko estimated the value of Mr. Boss' tangible personal property, including the contents of his home, at $750,000.

In 1973 Vitko prepared a will in which Harlan Boss devised all of his property to Gene Dawley, his live-in companion and financial and business adviser. Following Dawley's death in June 1980, Mr. Boss relied on Vitko for the management of his business and personal financial affairs. In September of 1980, Vitko drafted a new will for Mr. Boss, who was then 72 years old, in which Boss named Vitko as his executor and devised all of his tangible personal property and all interests in real estate to his executor to be distributed to Boss' family and friends, including the executor, as the executor, in his sole discretion, should see fit. The residue of the estate was to be held in trust for religious, charitable, scientific, literary or educational purposes. Vitko was designated as trustee and was authorized to pay himself or others such sums as he, in his sole discretion, should deem appropriate for services performed for the trust.

A year later Vitko drafted a revocable inter vivos trust for Mr. Boss. The trust corpus comprised Boss' interior decorating business, his tangible personal property, his shares of Specialty Manufacturing Company stock, any trust funds over which Boss had a power of appointment, his homestead, and all his other assets. The trust agreement of August 6, 1981 named Vitko trustee and bestowed on the trustee absolute powers of distribution with respect to Boss' tangible personal property: the trustee was empowered to distribute whatever tangible property came into his hands as trustee to any person, including the trustee himself.

The next year Vitko prepared a new will for Boss. Once again Boss appointed Vitko his executor and directed him to distribute all tangible property not already transferred to the 1981 trust among the members of Boss' family and his friends, including Vitko, as the executor in his sole discretion should see fit. The residue of Boss' estate, including any property over which Boss had a power of appointment pursuant to his mother's will, was devised to Vitko, as trustee under the trust agreement of August 6, 1981, to be administered as part of the trust estate.

Three months later, on May 27, 1982 the revocable trust created by the agreement of August 6, 1981, was made irrevocable. Vitko conceded that the agreement for a revocable trust had been workable, but he stated that Boss was being pressured to make provision for his companion, and he feared being prevailed upon to amend or revoke the trust and to turn his property over to someone else in a moment of weakness. Indeed, except for giving Vitko complete and sole discretion to appoint additional trustees and to remove any other trustee, the 1982 amendment did nothing but make the trust irrevocable.

Boss later began to distrust Vitko, and in 1990 he engaged another attorney, whose search of the public records revealed only the revocable trust agreement of August 6, 1991. Boss revoked Vitko's power of attorney and revoked the trust under the agreement of August 6, 1991. When the revocation was presented to him, Vitko produced the May 27, 1982 amendment.

Mr. Boss had no recollection of signing the May 27, 1982 amendment or even of discussing an amendment making the trust irrevocable. He testified that from time to time he and Vitko would have lunch together, that Boss usually drank martinis at these lunches, and that at these luncheons Vitko often presented a sheaf of papers which Boss signed without reading because he trusted Vitko.

Vitko's overall fees trebled between 1985, when he left Dorsey & Whitney, and 1990. His fees amounted to more than one-third of Boss' average gross income, and Boss said that Vitko had never provided him with a full accounting and that he was not aware that Vitko's fees had been $80,000 to $100,000 per year since 1985.

Boss told relatives in 1990 that he no longer trusted Vitko, and because Vitko, as president and a director of the William Boss Foundation and trustee of the Harlan D. Boss Trust controlled 80% of the stock of Specialty Manufacturing Company, the family worried about the company. When Vitko refused to resign as trustee and defeated an attempt to replace him as a director of Specialty Manufacturing, Harlan Boss and other members of the Boss family instituted separate actions to remove him as trustee of the Harlan D. Boss Trust and as co-trustee of the William and Edna Boss Trusts.

The matter was tried before a judge of the Ramsey County District Court who found that Vitko had fraudulently concealed from Boss the existence and effect of the May 27, 1982 amendment of the trust;[1] that Vitko's conduct constituted a conflict of interest and a breach of trust; and that Vitko's fees after March 1985 when he left Dorsey & Whitney were excessive and unreasonable. The district judge declared void the amendment making the trust irrevocable and awarded Harlan Boss a $360,000 judgment for excessive fees. In a separate action brought by relatives of Boss, the judge, citing Vitko's conflict of interest, also removed him as trustee of the William and Edna Boss trusts. The court of appeals affirmed the judgments in both cases.

In addition to the testimony presented at the hearing in this disciplinary proceeding, the referee reviewed the record provided him with respect to the civil litigation. Remarking that only a preponderance of the evidence was required to support the findings in those cases, the referee nevertheless concluded that the record before him, which included Vitko's testimony and the testimony of the

lawyer who represented Boss in his attempt to revoke his trust, together with the various exhibits received in evidence, contained clear and convincing evidence to support his findings. The referee concluded that Vitko's conduct was fraudulent and constituted a conflict of interest violative of both the Rules of Professional Conduct—Rules 1.4(b), 1.5(a), 1.7(b), 1.8(a, c), and 8.4(c, d)—and the superseded Code of Professional Responsibility—DR 1–102(A)(4), EC 5–5, DR 5–104(A), and DR 5–105(A)—all aggravated by his refusal to accept responsibility for any misconduct, his indifference to making restitution of the excessive fees, and his prior public discipline. He recommended that Vitko be suspended from the practice of law without right to apply for reinstatement for a minimum period of three years, that Vitko comply with all the requirements of Rules 24 and 26 of the Minnesota Rules on Lawyer Professional Responsibility and that Vitko comply with all the requirements of Rule 18 of the Minnesota Rules on Lawyer Professional Responsibility and either have satisfied the $360,000 judgment or have made good faith arrangements to make installment payments to satisfy the judgment before being eligible for reinstatement.

Vitko contends that he did not violate any rule of professional conduct and that his conduct caused no harm. It appears to be true that Vitko did not profit from his blatant conflict of interest in the sense that he did not have an opportunity during his trusteeship to distribute Boss' personal property to himself. But that does not mean that his client was not harmed. Vitko's failure to disclose the existence and effect of the 1982 amendment to the accountants who prepared Boss' tax returns resulted in the failure to file required fiduciary and gift tax returns. That conduct, compounded by his concealment of the amendment from Internal Revenue auditors, certainly placed the client in jeopardy. Vitko's fraud with respect to the 1982 trust amendment caused Boss to seek relief from the terms of the amendment and Vitko's refusal to resign as trustee forced

1. The district court found as one of the facts underlying the determination of fraud that Vitko's statement of services rendered for the period during which the trust amendment of May 27, 1982 was prepared and executed contained no mention of the amendment.

judicial intervention. Certainly, the necessity to initiate legal proceedings to correct the result of fraudulent conduct and the expense of such proceedings bespeak harm to the client, but in this case the client was also awarded judgment in the amount of $360,000 as reimbursement for unreasonable and excessive legal fees. Finally, even if Vitko's conduct had caused no other harm, it harmed the legal profession. Mr. Vitko may not regard his fraud, his conflict of interest and failure to advise Boss to consult independent counsel, and the excessive fees as misconduct, but we do. Moreover, we consider it serious misconduct.

Although we accord a referee's disciplinary recommendation great weight, we have the ultimate responsibility for imposing the appropriate discipline. In view of the nature of the misconduct revealed by this record and of Vitko's earlier misconduct, we have concluded that if the primary purposes of lawyer discipline—to guard the administration of justice, to protect the courts, the legal profession, and the public, and to deter misconduct—are to be served, Vitko must be disbarred.

Disbarred.