**In the Matter of Joe F. WATSON.**

**No. 80S00–9711–DI–629.**

Supreme Court of Indiana.

Aug. 22, 2000.

Leonard Opperman, Indianapolis, IN, for the respondent.

Donald R. Lundberg, Executive Secretary, Seth T. Pruden, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

By drafting for his client codicils that Respondent Joe F. Watson knew or should have known had the potential of providing a substantial gift to himself and his mother, the respondent engaged in an impermissible conflict of interest. We find today that the respondent's actions violate the *Rules of Professional Conduct for Attorneys at Law*. For those violations, the respondent and the Disciplinary Commission agree that the respondent should be suspended from the practice of law for sixty days. That agreement is now before us for final approval.

Our jurisdiction in this case is a result of respondent's admission to the bar of this state in 1958.

The respondent and the Commission agree that in 1982, the respondent wrote a will for an 85 year old man (hereinafter the "testator") who was the largest single shareholder in an Indiana telephone company, owning 189 out of 800 shares. The will named the testator's wife as residual

beneficiary, or, upon her death, the testator's daughter. The respondent's mother was the second largest shareholder, owning 102 shares. The respondent owned one share, served as director of the company, president of its board of directors, and as its general counsel. A trust owned or controlled another 92 shares, and the respondent's mother was one of two life beneficiaries of the trust. In all, the respondent and his mother owned or controlled some 103 of the 800 shares, and the respondent's mother was a partial beneficiary of another 92 shares.

After the testator executed the will the respondent had drafted for him, the testator's wife died, leaving the daughter as the sole beneficiary. In 1988, the respondent prepared for the testator a codicil which granted an option to the company, upon the testator's death, to purchase his 189 shares at a price reflecting the stated "book value,"[1] subject to the consent of the daughter. In 1992, when the testator was 96 years old, the respondent drafted a second codicil identical the first, except that the need for the daughter's consent was excised from it. At that time, the respondent knew or should have known that the option for the company to buy the shares at book value was setting a price which could be substantially less than fair market value.

The testator died on September 17, 1993. The respondent offered the will and codicils for probate on October 1, 1993. The executor of the estate (a local bank) hired the respondent as attorney for the estate. The respondent sought and was granted approval of the probate court to retain special counsel for the purpose of purchasing the testator's shares of the company. The Board of Directors elected to exercise the option to purchase the estate's shares at the listed "book value," determined to be approximately $9,500 per

share, for a total purchase price of approximately $1.8 million. About two years later, the respondent, his mother, and the company's remaining shareholders sold all of the company's stock for $21,000 per share, realizing an amount per share in excess of two times that paid to the testator's estate for the shares.

The parties dispute whether the "book value" of the stock was less than, equal to, or greater than the "fair market value" (see footnote 1, *infra*) at the time the respondent drafted the two codicils and at the time of the testator's death. The Commission contends that the book value was substantially less; the respondent claims it was equal to or greater than the fair market value.

■ We find that the mere potential for the shares' book value to be less than the fair market value created a situation that should have precluded the respondent from accepting employment as the testator's attorney to draft the codicils. Indiana Professional Conduct Rule 1.8(c) provides that a lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as a parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee. At that time, the respondent knew or should have known that the codicils had the potential for providing a substantial testamentary gift to himself or his mother. Had the book value been lower than the fair market value at the time the option was exercised, the company's shareholders (including the respondent and his mother) would have benefited because they would have experienced an increase in their equity interest in the company that exceeded the indirect cost to them of the company's exercising the option. Moreover, by pur-

---

1. The parties agree that "book value" is an accounting term that bears no necessary relationship to fair market value. They agree that "book value," as relevant to this case, is determined by assets at cost less depreciation. "Fair market value," they agree, is determined by assets valued at what a willing buyer would pay a willing seller, or the "open market value."

chasing the testator's shares, the company reduced the number of outstanding shares from 800 to 611, correspondingly increasing the percentage of ownership in the company by the respondent, his mother, and the trust, from approximately 25% to almost 33%. Accordingly, their interests became correspondingly more influential in controlling corporate decision-making as a result of the exercise of the stock option.

 Where it is possible, as it was here, that a testamentary gift has the potential substantially to benefit the drafting attorney or his family, the ethical propriety of drafting the instrument should be evaluated in light of reasonably foreseeable circumstances and not the capriciousness of market values years in the future. Because the respondent drafted the codicils when it was reasonably foreseeable that the instruments had the potential for providing a substantial gift to the respondent and his mother, the respondent violated Prof.Cond.R. 1.8(c). Professional Conduct Rule 1.7(b) provides, *inter alia*, that a lawyer shall not represent a client if the representation of the client may be materially limited by the lawyer's own interests, unless the lawyer reasonably believes the representation will not be adversely affected, and where the client consents after consultation. The respondent's drafting of the codicils permitting book value sale could have allowed for some of the estate's assets to be disposed at far less than fair market value, to the respondent and his mother's ultimate benefit. As such, the respondent violated Prof.Cond.R. 1.7(b).

Having found misconduct, we examine the issue of appropriate discipline for it. The respondent and the Commission agree that a 60–day suspension from the practice of law is commensurate with the misconduct. They note several mitigating factors, including the respondent's recognition of the wrongfulness of his misconduct, the fact that his relationship with the decedent was very close, and his 40 years of unblemished legal practice. In light of consideration of these factors, we determine that the agreed sanction is appropriate under the facts of this case.

It is, therefore ordered, that Joe F. Watson is suspended from the practice of law in this state for a period of sixty (60) days, effective September 30, 2000. At the conclusion of that period he shall be automatically reinstated to the practice of law in this state.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.