821 A.2d 414

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND,**

v.

**John A. BROOKE.**

**Misc. AG No. 36, Sept. Term, 2002.**

Court of Appeals of Maryland.

April 11, 2003.

158

Melvin Hirshman, Bar Counsel and Gail D. Kessler, Asst. Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Benjamin Lipsitz, Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary action against respondent alleging violations of the Maryland Rules of Professional Conduct. The Commission charged respondent with violating Rules 1.8(c) (Conflict of Interest, Prohibited Transactions),[1] 5.3(c) (Responsibilities Regarding Non-lawyer Assistants),[2] and 8.4 (Misconduct).[3] Pursuant to Maryland

---

\* Judge Eldridge participated in the hearing of the case but did not participate either in the conference in regard to its decision or in the adoption of the opinion.

1. Rule 1.8 reads, in pertinent part, as follows:

"(c) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where:
(1) the client is related to the donee; or
(2) the client is represented by independent counsel in connection with the gift."

2. Rule 5.3 reads, in pertinent part, as follows:

"With respect to a non-lawyer employed or retained by or associated with a lawyer:
(c): a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:
(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; .."

3. Rule 8.4 reads, in pertinent part, as follows:

"It is professional misconduct for a lawyer to:
(a): violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another; ...

Rule 16–752(a), we referred the matter to Judge Joseph P. McCurdy, Jr., of the Circuit Court for Baltimore City to make findings of fact and proposed conclusions of law.

Judge McCurdy held an evidentiary hearing in the Circuit Court for Baltimore City. Petitioner was represented by Bar Counsel and respondent was represented by counsel. In response to the Petition for Disciplinary or Remedial Action, respondent filed an Answer, setting forth a series of defenses thereto and a prayer that the hearing court dismiss the petition.[4] Judge McCurdy noted that this matter concerns the fact that respondent was named Personal Representative and sole legatee in the Last Will of John C. Sherpinski, Sr., and the allegation of the Attorney Grievance Commission that respondent violated the Rules of Professional Conduct. The hearing judge noted that there were two issues presented: (1) Was there an attorney-client relationship existing between respondent and the testator with respect to the preparation of the testator's Last Will and Testament; and (2) If there was such a relationship, did respondent violate one or more of the Rules as alleged by Bar Counsel? Following an evidentiary hearing, Judge McCurdy concluded that respondent had violated Rule 1.8(c).[5]

## I.

In a memorandum opinion dated November 21, 2002, Judge McCurdy summarized the events which lead to the present complaint:

"There is little disagreement regarding the facts of this case. It is undisputed that the [respondent] and the Testator had been friends for about twenty years, that the

---

(d): engage in conduct that is prejudicial to the administration of justice."

4. At the evidentiary hearing, respondent conceded that the hearing judge had no authority to dismiss the petition. *See* Maryland Rule 16–757.

5. Judge McCurdy also found that respondent violated Rule 8.4, but that the violation merged with the violation of Rule 1.8(c).

[respondent] had performed other types of legal services for the Testator prior to the will being prepared, and that the Testator spent a great deal of time engaging in social visits to the [respondent's] office. The Testator had also visited the [respondent's] home on the eastern shore of Maryland and at some point kept a boat there. All of the witnesses for the [respondent] testified that the Testator never actually admitted to having children, but was circumspect when asked if he had children.

"On September 8, 1999 the Testator visited the [respondent] and told him that he was being admitted to Maryland General Hospital the following day and that he wanted to execute a will naming the [respondent] personal representative and sole legatee. [Respondent] also testified however, that the Testator's primary concern was that he be buried at sea. The [respondent] testified that he told the Testator that he could write the will in his own hand, and advised the Testator of the witness requirements under Maryland Law. The [respondent] testified that the Testator began to draft a written document, but (apparently becoming frustrated) gave the handwritten notes to the [respondent], and asked if he could have the [respondent's] secretary prepare the will.

"The [respondent] testified that he was not aware of the provision of Rule 1.8(c), which provides that a lawyer shall not prepare an instrument giving the lawyer ... any substantial gift from a client, including a testamentary gift, except where: (1) the client is related to the donee; or (2) the client is represented by independent counsel in connection with the gift.

"Catherine Lastner testified that on September 8, 1999, the Testator met with the [respondent], but that she was not present and did not know what was discussed. She testified that the [respondent] asked her if she could prepare a will by the end of the day and "dictated" that he, the [respondent], was to be Personal Representative and sole legatee. Ms. Lastner testified that she knew how to prepare a simple will, and that she prepared a will for the Testator using either a computer program or by editing

another will already on the computer. She said that she did not read the will to the Testator, that he said that he would read it at a later date, and that he asked her to make a copy and mail it to him in a plain envelope using Ms. Lastner's return address. He also asked her if he could change the will. Ms. Lastner testified that she placed the unexecuted will in an envelope on [respondent's] desk, and that the [respondent] was not present at that time, having gone to his apartment on the second floor of the building.

"Joseph Gorlaski testified that he knew the [respondent] all his life, that he was a tenant of the [respondent], and that he is employed at Maryland General Hospital. He also knew the Testator and frequently worked with him at Assisi House, which is a charitable program operated by Saint Patrick's Roman Catholic Church in east Baltimore. Mr. Gorlaski testified that the [respondent] asked him to take something to Maryland General Hospital for the Testator. Mr. Gorlaski testified that he took the will off the [respondent's] desk and took it to the Testator's hospital room the next day. Mr. Gorlaski testified that the Testator signed the will in the presence of Mr. Gorlaski and Melissa Moreno, R.N., who witnessed the will in the presence of the Testator and each other. Mr. Gorlaski testified that he then took the executed will to his locker, took it with him when he left work, and left it on Ms. Lastner's desk."

Judge McCurdy included the following Findings of Fact and Conclusions of Law:

### Findings of Fact

"Based on the evidence submitted to the court at the hearing including the exhibits and the admissions of the [respondent], the court finds pursuant to Rule 16–757(b) that the following facts averred in the Petition have been proven by clear and convincing evidence:

"1. That the [respondent] had performed legal services for the Testator prior to the events which gave rise to the complaint in this case.

"2. That on September 8, 1999, the Testator visited [respondent's] office to discuss with the [respondent], the Testator's wishes to be buried at sea and to prepare a will.

"3. That the [respondent] advised the Testator regarding the elements of a valid will under Maryland law.

"4. That the [respondent] directed Catherine Lastner to write a will for the Testator naming the [respondent] the personal representative and sole heir.

"5. That Catherine Lastner is a non-lawyer assistant of the [respondent].

"The court further finds pursuant to Rule 16–757(b) that the [respondent] has proven the following facts by a preponderance of the evidence.

"6. That the [respondent] and the Testator were close social friends of many years standing.

"7. That the [respondent] was not aware of the provisions of Rule 1.8.

"8. That the [respondent] did not exercise undue influence upon the Testator.

"9. That it was the unequivocal intent of the Testator to name the [respondent] as his sole heir.

### Conclusions of Law

"The court makes the following conclusions of law:

"1. That an attorney-client relationship existed between the [respondent] and the Testator with respect to the preparation of the [respondent's] Last Will and Testament.

"2. That the [respondent] violated Rule 1.8 of the Rules of Professional Conduct.

"3. That the [respondent] did not violate Rule 5.3.

"4. That the [respondent's] violation of Rule 1.8 is professional misconduct under Rule 8.4.

"5. That the violations of Rule 1.8 and Rule 8.4 merge.

"Notwithstanding these findings, the Court does not find that the [respondent's] actions were taken with the intent to take advantage of a confidential relationship or to unlawfully harm the Testator's heirs at law and that the [respondent] made extraordinary efforts to follow the Testator's wishes regarding his burial. The appropriate sanction is, of course, for the Court of Appeals to decide. However, after careful consideration, it is this Court's opinion that a reprimand, which would be publicly and formally recorded would be the appropriate sanction."

Both parties have taken exceptions to these findings of fact and proposed conclusions of law.

## II.

■ This Court has original jurisdiction over attorney disciplinary proceedings. *See Attorney Grievance Comm'n v. Harris*, 371 Md. 510, 539–40, 810 A.2d 457, 474–75 (2002). In the exercise of our obligation, we conduct an independent review of the record, accepting the hearing judge's findings of fact unless clearly erroneous. *See Attorney Grievance Comm'n v. Garfield*, 369 Md. 85, 97, 797 A.2d 757, 763 (2002). The factual findings of the hearing judge will not be disturbed if they are based on clear and convincing evidence. *See Attorney Grievance Comm'n v. Monfried*, 368 Md. 373, 388, 794 A.2d 92, 100 (2002). We consider the hearing judge's proposed conclusions of law *de novo*. *See Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002).

■ Bar Counsel excepts to Judge McCurdy's findings of fact and proposed conclusions of law and specifically to footnote one on the judge's memorandum. Bar Counsel maintains that the hearing judge erred in admitting evidence of a disposition offered by Bar Counsel during preliminary negotiations.

During the course of the hearing, Judge McCurdy engaged in a protracted discussion with Bar Counsel and respondent's counsel concerning the admissibility of evidence relating to a

proposed reprimand and the recommendation of the peer review panel. In support of respondent's request for dismissal of the disciplinary petition, respondent offered evidence of Bar Counsel's proposed disposition and the peer review recommendation.[6] Bar Counsel objected, relying on Rule 16–737(d). Bar Counsel's objection was well taken and the hearing judge sustained the objection. Respondent asserted that the hearing court's ruling would preclude adequate review by this Court. The hearing judge ruled subsequently that "for the purpose of completing the record, [the evidentiary materials] are admitted but will not be considered by the Court in making findings of fact and conclusions of law."

Judge McCurdy, in the memorandum issued along with the findings of fact and proposed conclusions of law, included the following footnote:

"At the hearing, [respondent] attempted to introduce evidence of a proposed reprimand by the Commission offered pursuant to Maryland Rule 16–737(a) and rejected by the Commission pursuant to Rule 16–737(c)(3). This was admitted for the purpose of preserving the record only as [respondent's] Exhibit No. 5. The proceedings under Rule 16–737 were not read or considered by the Court, nor was the fact that the proceedings under Rule 16–737 occurred considered.

"Similarly, [respondent] attempted to introduce evidence regarding a Peer Review process conducted pursuant to Rule 16–743, which resulted in a recommendation which was not accepted by the Commission. This material is contained in [respondent's] Exhibit No. 6, which was admitted for the purpose of preserving the record only, and was likewise not read or considered by the court."

---

**6.** Respondent told the hearing court that the proffered evidence was admissible to support his challenge as to the constitutionality of several rules relating to attorney discipline. The arguments, included as "defenses" in respondent's Answer to Petition for Disciplinary or Remedial Action, were never fully developed before the hearing court, or raised before this Court.

Judge McCurdy was correct in not admitting evidence of the recommendation of the peer review panel and the proposed disposition offered by Bar Counsel during preliminary discussions.[7] *See* Maryland Rule 16–737(d). The Rule, precluding the admissibility of such evidence for any purpose, reads as follows:

"**Effect of rejection or disapproval.** If a reprimand is proposed and rejected or if a reprimand to which the parties have stipulated is not approved by the Commission, the proceeding shall resume as if no reprimand had been proposed, and neither the fact that a reprimand was proposed, rejected, or not approved nor the contents of the reprimand and any stipulation may be admitted into evidence."

By its plain language, the Rule explicitly precludes the admission into evidence of any proposed reprimand that has been rejected or disapproved. Rule 16–737 was crafted to facilitate dispositions between the Commission and an attorney under investigation. Such proceedings are akin to plea negotiations in the criminal context, and are accorded similar protection from discovery under the disciplinary rules. *See* Maryland Rule 5–410 (Inadmissibility of pleas, plea discussions, and related statements). Henceforth, it should be clear to all that any proposed disposition or proposed reprimand that was offered by Bar Counsel is not admissible in evidence and should not be brought to the attention of the hearing judge, either directly or indirectly.

■ Respondent excepted to several of the hearing judge's findings of fact and proposed conclusions of law. Respondent first excepts to the hearing judge's finding of fact that "the Testator visited [respondent's] office to discuss with the [respondent], the Testator's wishes to be buried at sea and to prepare a will." Respondent argues that the evidence does not support the inference that Mr. Sherpinski visited his office "for the purpose of preparing a will." He maintains that Mr.

---

7. Although the hearing judge used the term "admitted," it is clear that he recognized the evidence was inadmissible and he included it in the record solely to enable this Court to review the issue.

Sherpinski "simply happened to bring up those matters" while visiting respondent's office socially. Respondent notes that such visits by Mr. Sherpinski were common and that there had been no prior notice or arrangement for such a meeting. Further, the evidence indicated that other, non-business activities were discussed during the visit.

It is undisputed that Mr. Sherpinski visited respondent's office and, while there, discussed with respondent the preparation of a will. Further, respondent testified that Mr. Sherpinski "was very insistent and very concerned" about making arrangements for his death, that Mr. Sherpinski "really needed this stuff urgently," and that "[Mr. Sherpinski] seemed very, very concerned about the fact that he was going to the hospital [the following day]." That testimony supports the inference that Mr. Sherpinski's visit to respondent's office was more than a mere social call. Judge McCurdy's finding as to the purpose of the visit was supported by clear and convincing evidence. Accordingly, this exception is overruled.

■ Respondent next excepts to the hearing judge's finding that respondent "advised the Testator regarding the elements of a valid will under Maryland law." Respondent acknowledges that he told Mr. Sherpinski that he "could write the will by hand stating what his wishes were and have it witnessed by two witnesses." Respondent argues that "[c]onveyance of that minimal information" could simply have been the advice of a well-meaning friend, rather than a lawyer. The quantum of information does not determine whether the advice was given in the capacity of a friend or as an attorney. The fact that the requirements of a valid will are minimal does not alter the fact that they were the subject of respondent's advice, nor does it render the topic non-legal. Not all advice provided by an attorney is of a complex nature. Considering the totality of the circumstances, we find that Judge McCurdy's finding was supported by clear and convincing evidence. Accordingly, this exception is overruled.

■ Respondent excepts to the hearing judge's finding that "the [respondent] directed Catherine Lastner to write a will

for the Testator naming the [respondent] the personal representative and sole heir." Respondent objects to the hearing judge's use of the word "directed," arguing that the evidence indicates only that respondent asked his secretary to type up the will "if she had time ." Respondent claims that his inquiry did not amount to a directive.

Ms. Lastner, respondent's secretary, testified as follows:

"A: So Mr. Brooke called me in and he asked me if I could possibly have the will ready for Mr. Sherpinski before the end of the day so that it could be taken to him when he was sent to the hospital. At which time I replied, if it wasn't too long.

"Q: If it wasn't too long?

"A: Wasn't too involved, you know. And he told me, at that time, that it would be just that Mr. Sherpinski simply wanted a will drawn up naming him as PR and legatee.

\* \* \*

"Q: Okay. And how did you know what to insert in the—as far as the information specific to this will?

"A: Mr. Brooke dictated to me the two things he needed. I'm used to working for lawyers. I have worked for lawyers nine years. And if you're working for them all the time, it's gotten to the point where dictation can simply be this is a deed and it's going to go from so and so to so and so."

The testimony supports the inference that respondent directed his secretary to type up the will. Respondent argues that Ms. Lastner later seemed to recant her use of the word "dictated" during cross-examination. To the degree the testimony is in conflict, it was up to the hearing judge to assess the credibility of the evidence. Judge McCurdy was not clearly erroneous in accepting the witness's initial statement. Furthermore, whether respondent "dictated" the terms of the will to be drafted, or merely "said" what was to be included, does not alter the nature of the interaction between respondent and his secretary.

Respondent also argues that the secretary was not asked to "write" the will, but simply to type up a form under the direction of Mr. Sherpinski. Ms. Lastner testified as follows:

"A: I went in, I found something on the computer, what I call a simple will. We have different forms in the computer.

\* \* \*

"Q: And you prepared this will?

"A: Yes.

"Q: You typed it up on the computer?

"A: Yes, sir.

"Q: And printed it out?

"A: Yes, sir.

That the secretary was directed to type the information into a computer generated form rather than to create the document does not undermine the hearing judge's finding of fact that she wrote the will. Judge McCurdy's findings were supported by clear and convincing evidence. Accordingly, these exceptions are overruled.

Respondent excepts to the hearing court's finding that "the Testator began to draft a written document, but (apparently becoming frustrated) gave the handwritten notes to the [respondent]." Respondent's testimony that the Mr. Sherpinski "tore it off the pad and crunched it up and actually handed it to me" supports the factual statement by the hearing judge. Respondent argues that the hearing judge improperly omitted the fact that the paper containing the notes was discarded by the respondent immediately upon receipt. Respondent complains that omission of this fact leads to an inference that respondent acted with impropriety. The hearing judge, however, stated explicitly that "the Court does not find that the [respondent's] actions were taken with the intent to take advantage of a confidential relationship." Respondent's exception is overruled.

Finally, respondent claims that the summary of facts as recounted by the hearing judge attributes the following activities of the secretary and Mr. Sherpinski to the wrong date:

"[Ms. Lastner] said that she did not read the will to the Testator, that he said that he would read it at a later date, and that he asked her to make a copy and mail it to him in a plain envelope using Ms. Lastner's return address. He also asked her if he could change the will."

Respondent states that the preceding events occurred, not on September 8, 1999, but rather, during a subsequent visit by Mr. Sherpinski to respondent's office. Respondent is correct, but nonetheless, the conclusions as to his Rule violations are unchanged.

We turn now to respondent's three exceptions related to the hearing court's proposed conclusions of law. First, respondent excepts to the hearing judge's finding that an attorney-client relationship existed between respondent and Mr. Sherpinski with respect to the preparation of the will. Second, argues respondent, because no attorney-client relationship existed, the hearing judge's conclusion that respondent violated Rule 1.8(c) was erroneous. Third, according to respondent, because there was no basis to find a violation of Rule 1.8(c), the hearing court was also incorrect in finding a violation of Rule 8.4. In the alternative, respondent argues that the violation of Rule 8.4 amounts to impermissible double punishment for the violation of Rule 1.8(c). We find all of respondent's exceptions to be without merit.

We turn first to respondent's contention that the hearing judge erred in concluding that an attorney-client relationship existed between respondent and the testator with respect to the will. The record contains clear and convincing evidence that an attorney-client relationship was established between respondent and Mr. Sherpinski with respect to the preparation of the will.

Our predecessors have noted that "[w]hat constitutes an attorney-client relationship is a rather elusive concept." *Attorney Grievance Comm'n v. Shaw,* 354 Md. 636, 650, 732 A.2d

876, 883 (1999) (quoting *Folly Farms I, Inc., v. Trustees*, 282 Md. 659, 670, 387 A.2d 248, 254 (1978)). The question of whether an attorney-client relationship exists has arisen in a variety of circumstances. For example, this Court has considered whether the relationship exists in the context of agency and principal such that the lawyer bound the purported client to a particular transaction, *see Brown v. Hebb*, 167 Md. 535, 175 A. 602 (1934); whether a lawyer engaged in a business partnership was in an attorney-client relationship *vis-a-vis* his partners, *see Attorney Grievance Comm'n v. Kramer*, 325 Md. 39, 599 A.2d 100 (1991); and whether an attorney-client relationship exists for purposes of a claim against the Client Security Trust Fund. *See Folly Farms I*, 282 Md. 659, 387 A.2d 248. *See also, McCormick on Evidence* § 88, at 352 (5th ed.1999) (referring to the relationship in the context of the evidentiary privilege in attorney-client communications).

The Supreme Judicial Court of Maine, in *Board of Overseers of the Bar v. Mangan*, 763 A.2d 1189 (2001), in a disbarment disciplinary proceeding, recently considered whether an attorney-client relationship existed between the attorney and a purported client. The court reiterated its definition of "client," stating that "the term 'client' includes one who is either 'rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him.' " *Id.* at 1192 (quoting *Board of Overseers of the Bar v. Dineen*, 500 A.2d 262, 264 (Me.1985)). Although an attorney-client relationship ordinarily rests on contract, the contract need not be express and may be implied from the conduct of the parties. *See Shaw*, 354 Md. at 650-51, 732 A.2d at 883; *Healy v. Gray*, 184 Iowa 111, 168 N.W. 222 (1918). It is not necessary to the relationship that a retainer be requested or paid. *See Shaw*, 354 Md. at 650, 732 A.2d at 883. This Court has stated that the lack of any explicit agreement or payment arrangement did not preclude the formation of an attorney-client relationship. In *Attorney Grievance Comm'n v. James* we stated:

"Although an agreement upon the amount of a retainer and its payment is rather conclusive evidence of the establish-

ment of the attorney-client relationship, the absence of such an agreement or payment does not indicate conclusively that no such relationship exists. Indeed, the payment of fees is not a necessary element in the relationship of attorney and client. The services of an attorney to the client may be rendered gratuitously but the relationship of attorney and client nonetheless exists."

355 Md. 465, 476–77, 735 A.2d 1027, 1033 (1999) (quoting *Central Cab Co. v. Clarke*, 259 Md. 542, 549–50, 270 A.2d 662, 666 (1970)). Many courts have adopted the following standard to assess whether the relationship has been established: An attorney-client relationship is said to have been created when (1) a person seeks advice or assistance from an attorney; (2) the advice or assistance sought pertains to matters within the attorney's professional competence; and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. *See Board of Overseers of the Bar v. Mangan*, 763 A.2d 1189, 1192–93 (Me.2001); *State v. Gordon*, 141 N.H. 703, 692 A.2d 505, 506 (1997); *DeVaux v. American Home Assur. Co.*, 387 Mass. 814, 444 N.E.2d 355, 357 (1983); *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977); *Sheinkopf v. Stone*, 927 F.2d 1259, 1264 (1st Cir.1991).

■ The Restatement (Third) of the Law Governing Lawyers addresses the formation of an attorney-client relationship as follows:

"A relationship of client and lawyer arises when:

(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and . . .

(b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services . . . ."

Restatement (Third) of the Law Governing Lawyers § 14 (2000). The commentary describes the means by which an attorney-client relationship may be formed without an express agreement by the lawyer:

"Like a client, a lawyer may manifest consent to creating a client-lawyer relationship in many ways. The lawyer may explicitly agree to represent the client or may indicate consent by action, for example by performing services requested by the client. An agent for the lawyer may communicate consent, for example, a secretary or paralegal with express, implied, or apparent authority to act for the lawyer in undertaking a representation."

Restatement (Third) of the Law Governing Lawyers § 14, cmt. (e). *See also DeVaux*, 444 N.E.2d at 357–58 (stating that jury could find formation of attorney-client relationship based on conduct of attorney's secretary, even absent any conduct by attorney himself). An attorney-client relationship, therefore, does not require an explicit agreement. The relationship may arise by implication from a client's reasonable expectation of legal representation and the attorney's failure to dispel those expectations.

Respondent characterizes the interaction between Mr. Sherpinski and himself as "a product of their long-standing friendship" rather than a professional, attorney-client relationship. He identifies the close friendship, the brevity of the discussion, the lack of any other recent legal work by respondent on Sherpinski's behalf, and the lack of any agreement or appointment.

The evidence of close friendship does not negate the existence of an attorney-client relationship. Although an attorney providing assistance to a friend does not necessarily enter into an attorney-client relationship, it has never been the case that social interaction precludes an attorney from providing legal services to a client. *See Attorney Grievance Comm'n v. Sait*, 301 Md. 238, 482 A.2d 898 (1984) (finding no attorney-client relationship between attorney and family friend where attorney told friend he could not provide legal advice and counseled securing alternate representation).

It is undisputed that respondent had performed legal work for Mr. Sherpinski in the past. On September 8, 1999, Mr. Sherpinski sought advice and assistance from respondent.

The discussion occurred in respondent's law office, out of the presence of other people. The subject of the discussion was the drafting of a will, a matter within respondent's professional competence. The respondent's secretary drafted the will using respondent's legal forms. The will designated respondent as Mr. Sherpinski's personal representative. Perhaps most compelling, when contacted by the police following the discovery of Mr. Sherpinski's remains, respondent informed them that he was Mr. Sherpinski's attorney. There is no indication that the legal relationship of attorney-client, which previously existed between respondent and Mr. Sherpinski, was ever terminated. Judge McCurdy's finding that an attorney-client relationship existed when the will was created was supported by clear and convincing evidence. Accordingly, this exception is overruled.

 Respondent's second exception to the hearing judge's proposed conclusions of law relies on the faulty premise that no attorney-client relationship existed. He argues that because there was no attorney-client relationship, his interaction with Mr. Sherpinski did not amount to the practice of law. Respondent further claims that he did not engage in the practice of law because:

"[h]e did not do anything which required legal knowledge or skill, apply legal principles, exercise his professional judgment as a lawyer in connection with Mr. Sherpinski's will, interpret any documents, give any legal advice, or apply legal principles to any complex problem."

 To determine whether an individual has engaged in the practice of law, the focus of the inquiry should "be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *Attorney Grievance Comm'n v. Hallmon*, 343 Md. 390, 397–98, 681 A.2d 510, 514 (quoting *In re Discipio*, 163 Ill.2d 515, 206 Ill.Dec. 654, 645 N.E.2d 906, 910 (1994)). "Where trial work is not involved but the preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity, is involved, these activities are still the practice of law." *Id.*, 681 A.2d at

514 (quoting *Lukas v. Bar Ass'n of Montgomery County*, 35 Md.App. 442, 448, 371 A.2d 669, 673, cert. denied, 280 Md. 733 (1977)).

In the present case, the respondent's conduct was directly related to the preparation of a legal document and advice related thereto. As indicated above, the conduct was taken within the scope of an attorney-client relationship. Thus, respondent's exception is without merit and is overruled.

Respondent's final exception is without merit. As stated, the hearing judge properly found respondent in violation of Rule 1.8(c). A violation of the Rules of Professional Conduct may be a basis for finding a violation of Rule 8.4. Respondent argues that finding him in violation of both Rule 1.8(c) and Rule 8.4 constitutes double punishment for the same conduct. This argument ignores this Court's repeated assertion that the purpose of sanctioning an attorney's conduct is to protect the public rather than to punish the errant attorney. *See Attorney Grievance Comm'n v. Powell*, 369 Md. 462, 474, 800 A.2d 782, 789 (2002). Furthermore, the finding of a rule violation is a separate matter from the imposition of the sanction. The severity of the sanction imposed will depend on the particular facts and circumstances of each case; "the gravity of misconduct is not measured solely by the number of rules broken but is determined largely by the lawyer's conduct."[8] *See Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 568, 745 A.2d 1037, 1044 (2000) (quoting *Attorney Grievance Comm'n v. Milliken*, 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998)). The hearing judge's conclusion that respondent violated Rule 8.4 was supported by clear and convincing evidence.

### III.

We turn now to the appropriate sanction to be imposed. Respondent suggests that the appropriate sanction is

---

**8.** The hearing judge concluded that "the violations of Rule 1.8 and Rule 8.4 merge." As indicated above, respondent's conduct constituted separate rule violations, and "merger" was improper.

a reprimand. Bar Counsel recommends an indefinite suspension, with respondent's right to seek reinstatement conditioned upon his renunciation of any interest in the bequest made to him in the will respondent prepared for his client.

We iterate again that the purpose of sanctioning an attorney's conduct is to protect the public rather than to punish the errant attorney. *See Powell,* 369 Md. at 474, 800 A.2d at 789. The severity of the sanction imposed depends on the particular facts and circumstances of each case, including consideration of any mitigating factors or prior disciplinary actions. *See Attorney Grievance Comm'n v. Angst,* 369 Md. 404, 416–18, 800 A.2d 747, 755 (2002).

Respondent has violated Rule 1.8(c) and 8.4. We recently discussed the seriousness of a violation of Rule 1.8(c) in *Attorney Grievance Comm'n v. Stein,* 373 Md. 531, 819 A.2d 372 (2003):

> "There are many potential dangers inherent in an attorney drafting a will in which he or she is the beneficiary. Conflict of interest, the attorney's incompetency to testify because of a transaction with the deceased, the attorney's ability to influence the testator, the possible jeopardy to probate of the entire will if its admission is contested, the possible harm to other beneficiaries and the undermining of the public trust and confidence in the legal profession are some of the dangers."

*Id.* at 538, 819 A.2d at 376. We also quoted the following passage from the Supreme Court of Ohio:

> "A client's dependence upon, and trust in, his attorney's skill, disinterested advice, and ethical conduct exceeds the trust and confidence found in most fiduciary relationships. Seldom is the client's dependence upon, and trust in, his attorney greater than when, contemplating his own mortality, he seeks the attorney's advice, guidance, and drafting skill in the preparation of a will to dispose of his estate after death. These consultations are often among the most private to take place between an attorney and his client. The client is dealing with his innermost thoughts and feelings,

which he may not wish to share with his spouse, children and other next of kin.

"Because the decisions that go into the preparation of a will are so inherently private, and because, by definition, the testator will not be available after his death, when the will is offered for probate, to correct any errors that the attorney may have made, whether they are negligent errors or of a more sinister kind, a client is unusually dependent upon his attorney's professional advice and skill when he consults the attorney to have a will drawn. The client will have no opportunity to protect himself from the attorney's negligent or infamous misconduct."

*Disciplinary Counsel v. Galinas*, 76 Ohio St.3d 87, 666 N.E.2d 1083, 1086 (1996) (quoting *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 567 N.E.2d 1291, 1296 (1991)).

Respondent recognizes the numerous decisions from other states where attorneys were suspended for violating those states' versions of Rule 1.8(c). *See In re Polevoy*, 980 P.2d 985 (Colo.1999); *In re McCann*, 669 A.2d 49 (Del.1995); *Florida Bar v. Anderson*, 638 So.2d 29 (Fla.1994); *In re Watson*, 733 N.E.2d 934 (Ind.2000); *Kalled's Case*, 135 N.H. 557, 607 A.2d 613 (1992); *Disciplinary Counsel v. Bandy*, 81 Ohio St.3d 291, 690 N.E.2d 1280 (1998); *In re Gillingham*, 126 Wash.2d 454, 896 P.2d 656 (1995); *see also In re Vitko*, 519 N.W.2d 206 (Minn.1994) (ordering that attorney with prior disciplinary violations be disbarred for violation of Minnesota's Rule 1.8(c) despite absence of actual harm to testator).

Nonetheless, respondent argues that the circumstances of his situation and the relationship he had with Mr. Sherpinski, warrant a less severe form of sanction. As mitigating factors, respondent cites his lack of prior disciplinary sanctions; that the present case involves a single act of misconduct; that he was unaware of Rule 1.8(c); and that he did not exercise any undue influence upon Mr. Sherpinski.

A similar argument was made before us in *Stein*, where the attorney also recommended reprimand as an appropriate sanction. Stein drafted a will for his client which left a substantial

gift to himself. The client had been a close friend of Stein's father, and had continued the relationship with Stein. Further, there was no evidence that the attorney placed undue influence upon his client or that the will represented anything other than the client's true intent.[9] We rejected Stein's request for a reprimand, determining that an attorney's violation of Rule 1.8(c) warranted indefinite suspension regardless of the lack of evidence of improper influence by the attorney. *See Stein,* 373 Md. at 543, 819 A.2d at 379.

We conclude that an indefinite suspension is the appropriate sanction in the instant matter. Respondent violated Rules 1.8(c) and 8.4. Respondent suggests that a reprimand is the appropriate sanction because the hearing judge found that respondent did not exercise undue influence upon the testator. Rule 1.8(c) is absolute—an attorney may not prepare an instrument designating himself as legatee under the circumstances presented herein. Deterrence of such conduct and the public confidence in the legal profession can only be preserved by protecting against this behavior.

As in *Stein,* Bar Counsel recommends that the indefinite suspension be coupled with a condition for reinstatement. Bar Counsel suggests "that the right to seek reinstatement be expressly conditioned on the Respondent's renunciation of any interest in the bequest left to him by the Will." As in *Stein,* we decline to adopt Bar Counsel's recommendation.

We noted in *Stein* that, ordinarily the proper disposition of the testator's estate is a subject of a probate proceeding, and that restitution under the Rules of Professional conduct is inconsistent with the principles set forth in their preamble:

"Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating

---

9. Furthermore, like the present case, Stein had not been the subject of prior disciplinary sanctions; had committed only a single act of misconduct; and stated that he was unaware of the provisions of Rule 1.8(c).

conduct through disciplinary agencies. They are not designed to be a basis for civil liability."

In *Stein*, an Orphans' Court proceeding to challenge the bequest had been stayed pending the resolution of the disciplinary proceeding. In the present case, the testator's son filed a caveat and the matter was settled in the Orphans' Court for Baltimore County. By its Settlement Order dated March 13, 2002, the Orphans' Court approved the settlement in accordance with terms reached by respondent and Mr. Sherpinski's son, which distributed the estate 55% to respondent and 45% to the son.[10]

Bar Counsel's request that we require renunciation of the bequest as a condition of reinstatement whenever Rule 1.8(c) has been violated fails to consider some of the policy effects of a *per se* rule. Aside from our belief that ordinarily this is not the appropriate forum to determine the proper distribution of an estate, we have concerns about the potential collateral effects of the *per se* condition of reinstatement recommended by Bar Counsel. In Maryland, an indefinite suspension, by its very terms, is not a permanent status, nor is disbarment. Some of our sister jurisdictions provide for permanent disbarment. *See e.g.*, Florida, Fla. Bar. Reg. R. 3–5.1(f); New Jersey, N.J. Ct. R. 1:20–16(i); Ohio, Ohio Gov. Bar. R. V(6)(C). In Maryland, following disbarment or indefinite suspension, an attorney may file a petition for readmission. *See* Maryland Rule 16–781 (providing procedures for reinstatement of attorney "who has been disbarred or suspended indefinitely or for more than six months."). A *per se* rule requiring renunciation of any bequest under circumstances presented herein could result, in some circumstances, in a permanent disbarment.

We do not have before us a complete record of the proceedings in the Orphans' Court, but considering that the testator's death occurred on December 31, 1999, and the Settlement Order awarding 55% of the estate to respondent was entered

---

**10.** The Orphan's Court has also exercised its jurisdiction to suspend and reinstate respondent's powers as personal representative. The estate, still open, is presently being administered by the respondent.

as a final judgment in the Orphans' Court over a year ago, the statutory nine month period for disclaimer has elapsed. As a result, respondent may well be unable to disclaim the bequest under the will. If we adopt, in this context, the General Assembly's usage that renouncing is equivalent to disclaiming, the condition Bar Counsel recommends would be impossible for respondent to satisfy.[11]

Respondent replies to Bar Counsel's suggestion that he renounce the bequest with the following averment:

"Should this Court conclude that renouncing his interest is necessary or advisable, Brooke respectfully submits that he would be willing to do so on condition that any benefits involved be earmarked as a fund to be used in the name of the late Mr. Sherpinski for the benefit of seamen, through an appropriate organization, rather than go to a child, contrary to and in violation of Mr. Sherpinski's express wishes."

Respondent is free to donate his gift to a charitable institution if he so chooses. We shall not negotiate with him as to who shall benefit from the gift.

Indefinite suspension is the appropriate sanction. It is hereby ordered that:

1. Respondent, John A. Brooke, is indefinitely suspended from the practice of law in Maryland. This period of suspen-

---

11. Bar Counsel's recommendation of renunciation in every case presents other potential problems. Although not a concern in the present case or *Stein*, Rule 1.8(c) is not restricted to bequests made to the drafting attorney. The rule also prohibits an attorney from drafting an instrument for an unrelated, not independently represented client which leaves a substantial gift to "a person related to the lawyer as parent, child, sibling, or spouse." Thus, it may be that an attorney drafts a will improperly, leaving a substantial bequest to a person who, although related to the lawyer and within the ambit of the rule, is beyond the control of the lawyer for the purposes of renunciation. Further, where the gift has been left to a minor child of the attorney, the laws of this State would seem to prevent any such renouncement by the child absent the involvement of a separate guardian. *See* Maryland Code (2001) § 13–201 *et seq.* of the Estates and Trusts Article.

sion shall commence thirty (30) days from the date of entry of this Opinion and Order.

2. Respondent is directed to pay all costs associated with these disciplinary proceedings as taxed by the Clerk of this Court.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOHN A. BROOKE.*

Dissenting opinion by WILNER, J., joined by HARRELL, J.

For the reasons stated in my dissent in *Attorney Grievance Comm'n v. Stein,* 373 Md. 531, 819 A.2d 372 (2003), I dissent from the sanction imposed here. The only thing that makes sense is for Brooke either to renounce/disclaim the bequest he wrongfully placed in his client's Will or, if that is no longer possible because of the extent to which the estate has already been administered, to pay the funds over to those who otherwise would have received them if the bequest had not been made. That, and that alone, gives the Rule meaning.

Even if, as the Majority surmises, Brooke may not be in a position to renounce/disclaim formally the bequest he is to receive, the possible repercussions foreseen by the Majority were Brooke's readmission tied, expressly or otherwise, to a condition of renunciation/disclaimer would not be unjust in this case. Brooke's claimed lack of knowledge as to the existence of the requirements of Rule 1.8(c) at the time the Will was prepared was accepted as fact by the hearing judge; however, according to information gleaned from the record, that state of ignorant bliss did not extend beyond March 27, 2000. On that date, Mr. Sherpinski's son apparently raised the violation of

the Rule as a ground of his caveat in a hearing in the Orphan's Court. The Register of Wills, in a letter of May 16, 2000, notified the Attorney Grievance Commission of the allegation vis à vis Rule 1.8(c), the receipt of which letter apparently instigated the Commission's interest in this matter. Yet, Brooke thereafter proceeded to formalize a settlement with Mr. Sherpinski's son, by which Brooke secured a 55% interest in the estate bequest. The order effectuating that settlement in the Orphan's Court was entered on March 13, 2002. Thus, it appears Brooke knew or should have known of the requirements of Rule 1.8(c) long before he proceeded to secure the bequest for himself.

Judge HARRELL authorizes me to state that he joins in this Dissent.