STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-09-459
JAW-CUM- 1/20/2010

CASSANDRA LIBERTY,

Plaintiff

DECISION AND ORDER

v.

JEFFREY BENNETT and
THE BENNETT LAW FIRM, P.A.,
Defendants.

## BEFORE THE COURT

This matter comes before the court on Defendants', Jeffrey Bennett ("Bennett" or "Defendant") and The Bennett Law Firm, P.A. ("Firm" or collectively "Defendants"), special motion to partially dismiss Plaintiff's, Cassandra Liberty ("Liberty" or "Plaintiff") complaint, pursuant to Maine's Anti-SLAPP Statute,[1] and Defendants' motion to dismiss pursuant to Rule 12(b)(6). Attorneys for both parties presented argument for the Defendants and Plaintiff respectively on January 5, 2010.

## BACKGROUND AND PROCEDURAL HISTORY

This action is yet another to add to the long series of contentious cases that began in March 2000 with the Defendants' legal representation of Darlene Copp in the divorce action between she and Scott Liberty. Darlene and Scott are the Plaintiff's mother and father. The Plaintiff complains that Bennett, both in his representation of her mother and in his personal relationship with her mother and her siblings, acted in such way that resulted in the current nine-count complaint.

---

[1] SLAPP is an acronym for Strategic Lawsuit Against Public Participation. *See* 14 M.R.S.A. § 556; *Morse Bros. Inc. v. Faylene Webster et al.*, 2001 ME 70, ¶ 10, 772 A.2d 842, 846.

The facts and allegations in the complaint state, but are not limited to, the following: that Bennett manipulated both Darlene Copp and the legal system by lying and falsely accusing Scott Liberty of various transgressions which resulted in a destruction of the parent/child relationship between the Plaintiff and her father; that Bennett, while representing Darlene Copp, was a constant fixture in the Plaintiff's household who took control of the day-to-day lives of the family; that his presence became controlling to the extent that he threatened to foreclose a mortgage held in the Defendants' name if Copp and her children did not comply with his dictates; that Bennett disparaged Plaintiff by screaming at her, calling her names, and telling lies about Plaintiff to other people in her community; that he searched Plaintiff's room and removed items that he had given her; and that he thwarted Plaintiff's emancipation efforts by trying to force her to lie to the police about communications with Scott Liberty and by telling attorneys not to represent her. The complaint further states that the Defendants' actions have caused the Plaintiff serious damages.

On August 19, 2009, the Plaintiff filed a nine-count complaint against the Defendants alleging the above stated facts and claims. On September 30, 2009, with the court's permission, the Defendants filed the present motion to dismiss and special motion to dismiss. The Plaintiff filed opposition motions on November 3, 2009. On December 3, 2009, with permission from the court, the Defendants filed a reply in support of their motions.

At the outset it is important to clarify that the court will *not* permit the Plaintiff to relitigate the numerous judicial decisions preceding the present action before the court. The Plaintiff's suggestion that children who obtain the age of majority or who

2

emancipate themselves gain the right to contest issues that were litigated between their parents while they were minors is impractical. If the court were to follow the Plaintiff's reasoning, then any child who was unhappy with a parental and/or a judicial decision could file a complaint as soon as reaching the age of majority or becoming emancipated. The court declines to adopt this reasoning, as it would no doubt result in an onslaught of unnecessary litigation.

Further, through the Maine Legislature, not only are courts charged with applying the best interest of the child standard to decisions regarding parental rights and responsibilities, 19-A M.R.S.A. § 1653(3), the Maine courts also have the means to ensure that a child's best interests are represented in court proceedings through guardian ad litems. *See* 19-A M.R.S.A. § 1507. When deemed necessary by the presiding judge, guardian ad litems are appointed to ensure that a child's best interests are represented in the judicial action. Further, guardian ad litems can petition the court for legal representation for a child if he or she believes it is necessary to maintain the child's best interests.[2] *Id*; *see also* In re *Nikolas*, 1998 ME 243, ¶¶ 8-10, 720 A.2d 562, 564-65 (noting that when a "child is a minor, a guardian ad litem is appointed . . . [and] the

---

[2] The Law Court has stated that a guardian ad litem

> occup[ies] a position somewhere between the court that appoints her and the child whose interests she represents, a guardian ad litem potentially fulfills two functions: officer of the court and attorney for the child. The function of the guardian ad litem will often depend on the type of proceeding in which the guardian is appointed. For example, when appointed to represent a minor in a settlement negotiation she may act primarily as an advocate for the child, whereas when appointed to see to the best Interests of the child in a custody dispute she traditionally acts as an arm of the court. Of course the line between the two roles is not always clear and the guardian may act as a "hybrid" of the court's adjunct and the child's advocate.

*Kennedy v. State*, 1999 ME 85, n.9, 730 A.2d, 1252, 1256 (internal citations and quotations omitted).

3

guardian, as the legal representative of [the child, can be] an aggrieved party and, as such, has standing to prosecute this appeal").

The court concludes that the prior judicial actions noted by the Plaintiff have been fully litigated, with appellate procedures attached thereto. The court presiding over the previous cases had the statutory discretion to appoint a guardian ad litem and chose not to. The presiding judge was required to make decisions in her best interest. This court declines to consider damages related to previous judicial orders. A guardian ad litem could have been appointed both to represent the Plaintiff and appeal any orders allegedly counter to her best interests. However, although the Plaintiff is barred from litigating alleged damages stemming from these orders, her complaint does contain facts supporting other damages unrelated to the judicial prohibition of contact with her father. The claims that survive the motion to dismiss are discussed in full below.

## DISCUSSION

### I.      Anti-SLAPP Statute Special Motion to Dismiss: Standard of Review

Maine's Anti-SLAPP statute[3] "was designed to combat litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants." *Maietta Constr. Inc. v. Wainwright*, 2004 ME 53, ¶ 6, 847 A.2d 1169, 1173 (quoting

---

[3] The statute provides, in part:
> When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The court shall advance the special motion so that it may be heard and determined with as little delay as possible. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S.A. § 556.

4

*Morse Bros. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842, 846). The Law Court has stated that "Section 556 targets plaintiffs who 'do not intend to win their suits; rather they are filed solely for delay and distraction, and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances.'" *Id.*

When faced with a special motion to dismiss, "the court must first determine whether the claims against the moving party are based on the moving party's exercise of the right to petition pursuant to the federal or state constitutions." *Morse*, 2001 ME 70, ¶ 19, 772 A.2d at 849. If the moving party is able to demonstrate that "the statute applies, the burden shifts to the responding party to establish, through pleadings and affidavits, 'that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party.'" *Morse*, 2001 ME 70, ¶¶ 19- 20, 772 A.2d at 849 (citing 14 M.R.S.A. § 556).

The Defendants argue that the Plaintiff's complaint centers around actions submitted to a judicial body pursuant to the right to petition, and as such, they are entitled to protection under the anti-SLAPP statute.[4] The Maine Anti-SLAPP statute broadly defines the exercise of the "right to petition" as:

> any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such

---

[4] The court notes that the Defendants' single-spaced motion is not in compliance M.R.Civ. P. 7(f) and its requirement that "typed matter must be double spaced . . . [and not] exceed 10 pages."

consideration; or any other statement falling within constitutional protection of the right to petition government.

(14 M.R.S.A. § 556). Despite this broad language, this case does not involve the typical subject matter that the statute was intended to address – "lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Maietta*, 2004 ME 53, ¶ 7, 847 A.2d at 1173; *Morse Bros.*, 2001 ME 70, ¶ 10, 772 A.2d at 846; *see also Schelling v. Lindell*, 2008 ME 59, ¶ 14, 942 A.2d 1226, 1231 (noting that the language of the statute "is plainly meant to extend to statements that may have the effect of bringing an issue not currently under consideration into consideration or review by any governmental body"). This does not necessarily mean that this case does not fall within the confines of the statute, but careful consideration should be given "before a statute designed to protect one party's exercise of its right to petition is interpreted to impinge on another party's exercise of its own right to petition—specifically, its right to petition the courts for redress of grievances by filing a lawsuit." *Jamison v. OHI*, 2005 Me. Super. LEXIS 161 (Nov. 28, 2005).

Upon review the court concludes that although Liberty's complaints are related to the Defendants' role in the various court proceedings that have taken place since 2000, many of her claims also encompass alleged actions by the Defendants not directly related to the representation. Liberty's complaint contains many counts based on *her* interactions with Bennett.[5] As such, the court concludes that Liberty's complaint is not solely "based on [Defendants'] exercise of [the] right of petition under the" Maine and United States Constitutions; nor was it "filed solely for delay and distraction." 14

---

[5] For example, Bennett's alleged control over Liberty and her family and his alleged defamatory statements do not constitute the exercise of a right to petition even under the broad definition urged by the Defendants.

M.R.S.A § 556; *Maietta*, 2004 ME 53, ¶ 6, 847 A.2d at 1173 (internal citations omitted).
Accordingly, Defendants' special motion to dismiss is DENIED, and the court must
address their motion to dismiss.

## II.    Motion to Dismiss: Standard of Review.

A motion to dismiss "tests the legal sufficiency of the complaint." *Livonia v.
Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. In determining whether a motion to
dismiss should be granted, the court considers "the allegations in the complaint in relation
to any cause of action that may reasonably be inferred from the complaint." *Saunders v.
Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832. The facts alleged are treated as admitted,
and they are viewed "in the light most favorable to the plaintiff." *Id.* The court should
dismiss a claim only "when it appears beyond a doubt that the plaintiff is not entitled to
relief under any set of facts that he [or she] might prove in support of his [or her] claim."
*Id.* (quoting *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1246).[6]

## III.    Liberty's Claims

The Defendants have moved to dismiss on the basis that Liberty has failed to state
a claim for which relief may be granted. The court will examine each of her nine claims
below,[7] but again notes that Liberty is not entitled to damages on the basis of the
prohibition on communications with her father as discussed above.

---

[6] The court notes that both parties have provided affidavits in support of their positions. Whether
the court accepts affidavits and other evidence is a discretionary decision. The court declines to
accept them here. *See* M.R. Civ. P. 12(c) (stating that "[i]f, on a motion for judgment on the
pleadings, matters outside the pleadings are presented to and *not excluded by the court*, the
motion shall be treated as one for summary judgment") (emphasis added)).

[7] The court notes that Count IX, defamation, is mislabeled in the complaint as Count X. The
court hereinafter refers to the count as Count IX.

A. Count I:     Intentional Infliction of Emotional Distress

In order to prevail on her claim for intentional infliction of emotional distress, Liberty must show that: (1) the defendant engaged in intentional or reckless conduct that inflicted serious emotional distress or would be substantially certain to result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable; (3) the plaintiff suffered serious emotional distress as a result of the defendant's conduct ; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18, 22-23; *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842, 847. Although the jury must determine whether the elements of the tort were in fact satisfied, the court must first determine whether, as a matter of law, the facts alleged are sufficient to satisfy the elements. *Champagne*, ¶ 16, 711 A.2d at 847.

Whether an act is "intentional" under the law depends on whether a person subjectively wants or subjectively foresees "that harm to another will almost certainly result from his actions." *Curtis*, ¶ 12, 784 A.2d at 23. Further, a "person acts recklessly if she knows or should know that her conduct creates and unreasonable risk of harm to another person and the unreasonableness of her actions exceeds negligence." *Id.* ¶ 13, 784 A.2d at 23 (noting that the Restatement defines "reckless" as conduct that would lead a reasonable person to realize the unreasonable risk of harm to another).

At this stage in the proceedings, and without additional evidence about the circumstances surrounding Liberty's complaint, the court finds that the Defendants' actions could rise to the level of intentional and outrageous conduct. Therefore, this court

8

cannot say as a matter of law that the Defendants' actions definitively were not extreme and outrageous such that they would be regarded as atrocious and utterly intolerable. *Rubin v. Matthews International Corp.*, 503 A.2d 694, 699 (Me. 1986) (noting that when "reasonable men could differ as to the outrageousness of the defendant's conduct, it was for the jury to determine whether the conduct was sufficiently extreme and outrageous to result in liability").

Similarly, for the purposes of this motion, the court accepts as true the factual allegations of the complaint—that the Defendant's alleged yelling, name-calling, lying, and controlling behavior caused the Plaintiff severe emotional distress—and concludes that it adequately establishes the elements of IIED, and thus dismissal is not appropriate at this time. Severe emotional distress exists where the mental stress engendered by the circumstances of the event is "so severe that no reasonable person could be expected to endure it." *Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 17, 834 A.2d 947, 952. "Although 'severe' emotional distress is usually manifested by 'shock, illness or other bodily harm,' such objective symptomatology is not an absolute prerequisite for recovery of damages for intentional . . . infliction of emotional distress.'" *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 154 (Me. 1979) (citing *Restatement (Second) of Torts* § 46, Comment k. (1965)).

Accordingly, Defendants' motion to dismiss the Plaintiff's claim of intentional or reckless infliction of emotional distress is DENIED.

9

B. Count II: Negligence: Bennett as Plaintiff's Attorney

In Count II Liberty claims that Bennett was not simply her mother's attorney, but that he held himself out as her attorney as well, and as such owed her a duty of care that was negligently breached.

An attorney-client relationship exists when: "(1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *Board of Bar Overseers v. Mangan*, 2001 ME 7, ¶ 9, 763 A.2d 1189, 1192-93 (adopting the New Hampshire definition of an attorney-client relationship; *State v. Gordon*, 692 A.2d 505, 506 (N.H. 1997)). In *Mangan,* the client settled her personal injury case for an amount insufficient to pay her medical bills. *Id.* ¶ 2, 763 A.2d at 1191. She consulted the attorney for help negotiating with her treatment providers, and he helped her without a formal fee agreement. *Id.* The Court held that an attorney-client relationship existed because the client had "sought advice or assistance" that the attorney was competent to render, and that he did in fact assist her. *Id.* ¶ 10, 763 A.2d at 1193.

Liberty claims that since she "repeatedly expressed the wish to Jeffrey Bennett and sought Bennett's legal counsel and assistance . . . in seeking communication and visitation with her father," an attorney-client relationship was created. (Pl.'s Compl. ¶ 96.) The court disagrees. Despite this statement and even when viewing the facts in a light most favorable to the Plaintiff, there is no evidence that the Defendants expressly or impliedly agreed to give or actually gave Liberty advice or assistance in communicating with her father. *See Arroyo-Audifred v. Verizon Wireless, Inc.,* 527 F.3d 215, 217 (1st

10

Cir. 2008) (stating that a court is not "required to accept as true . . . each and every unsupported, subjective, conclusory or imaginative statement made by a party"). In fact, as the Defendants point out in their Reply memorandum, Bennett was not only acting at the direction of his client, Liberty's mother, when he advocated to prohibit communications between Scott Liberty and the Plaintiff, but there were also "court orders prohibiting Plaintiff's contact with her father." (Def.'s Reply Mem. at 6-7.)[8] The court concludes that the claims of negligence based on a violation of Bennett's attorney-client duty to Cassandra fail as a matter of law as no such relationship exists. As such, Defendants' motion to dismiss Count II is GRANTED.

C. <u>Count III</u>:    Negligence: Bennett's Fiduciary Duty to Cassandra in His Capacity as Attorney for Her Guardian, Darlene Copp

In Count III Plaintiff argues that Defendants breached their fiduciary duty to her because Darlene Copp had a fiduciary duty to her children which she breached, the Defendants knew and aided her in breaching said duty, and are therefore liable to her for the breach.

A fiduciary duty is created when "one standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." *Bryan R. v. Watchtower Bible and Tract Soc'y of New York, Inc.*, 1999 ME 144, ¶ 15, 738 A.2d 839, 845 (quoting RESTATEMENT (SECOND) OF TORTS 874 (1965)). A fiduciary, or confidential relationship requires "the actual placing of trust and confidence in fact by one party in another," and "a great disparity of position and influence between the parties to the relation." *Id.* The question of whether one party owes a fiduciary or other duty of due care to another is a question of law. *Fortin v.*

---

[8] The court declines to address the Plaintiff's confinement and evaluation in Spring Harbor Hospital here as it is fully addressed below.

11

*Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 35, 871 A.2d 1208, 1220.

"In order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Fortin*, 2005 ME 57, ¶ 26, 871 A.2d at 1218. The Plaintiff has not established sufficient facts supporting the allegation that a fiduciary duty existed between Bennett and Liberty simply because he represented her mother. The court further notes that to adopt the Plaintiff's viewpoint is nonsensical both from a practical litigation standpoint—frequently children may not agree with a parent, especially during high-stress divorce proceedings—and because Maine law already provides protection for children through the appointment of a guardian ad litem. *See* 19-A M.R.S.A. § 1507 (noting that a "court may appoint a guardian ad litem when the court has reason for special concern as to the welfare of a minor child"). As the Plaintiff has not adequately plead facts establishing a fiduciary relationship between she and the Defendants, the court GRANTS the Defendants' motion to dismiss Count III.

D. <u>Count IV</u>:     Negligence: Bennett as *De Facto* Head of Household

Count Four contends that Bennett acted in the role of a *de facto* "head of household" to Liberty and her siblings, and as such he owed a duty of care to the family that he negligently breached. The court notes that the Plaintiff cites to no Maine law supporting a theory of *de facto* head of household, but in her opposition to the motion to dismiss likens this alleged duty to the status of a *de facto* parent. (Pl.'s Opp'n M. Dismiss at 14.) Although *de facto* parental rights may be recognized in "third persons who have played an unusual significant parent-like role in a child's life, but who are

12

neither the natural nor adoptive parent of the child," the court does not find such rights exist here. *See* Levy, *Maine Family Law: Divorce, Separation and Annulment* §6.4.4 at 6-35 (2009 ed. 1999); *see also C.E.W. v. D.E.W.*, 2004 ME 43, ¶ 14, 845 A.2d 1146, 1152 (noting that the status of *de facto* parent is a status only delineated in limited circumstances). *De facto* parental rights are awarded after a determination that it is in the child's best interests and the adult has demonstrated a commitment to the child; neither of which is present here. *Philbrook v. Theriault*, 2008 ME 152, ¶¶ 22-23, 957 A.2d 74, 79. As such, the Plaintiff is not entitled to relief under a *de facto* parent theory, therefore the Defendants' motion to dismiss Count Four is GRANTED.

E. <u>Count V</u>: Negligent Infliction of Emotional Distress

In Count V Liberty alleges a claim of negligent infliction of emotional distress (NIED). There is no general duty to avoid negligently causing emotional harm to others. *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18, 25. In order to prevail on a claim for negligent infliction of emotional distress, a plaintiff must show "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18, 25. Liberty alleges that Bennett owed her a duty "by virtue of his role as attorney for [her] legal guardian . . . , and/or by virtue of his role as *de facto* head of the Copp family household." (Pl.'s Compl. ¶ 126.) As discussed above, the court does not find that a duty exists under either of these theories, thus she is unable to sustain a claim for NIED.

Further, if the Plaintiff is asserting an independent NIED claim, it is not sufficiently stated in Count V and will not be considered. The independent tort of NIED

13

applies only in "limited circumstances;" either in "bystander liability actions" or when "a special relationship exists between the actor and the person emotionally harmed." *Curtis v. Porter,* ¶ 19, 784 A.2d at 25. Bystander liability occurs when "the plaintiff bystander was present at the scene of the accident, suffered mental distress as a result of observing the accident and ensuing danger to the victim, and was closely related to the victim." *Culbert v. Sampson's Supermarkets Inc.,* 444 A.2d 433, 438 (Me. 1982). Additionally, the harm suffered must amount to "serious mental distress" such that "a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Id.* at 437. In the present case, the Plaintiff has not adequately alleged any special relationship existed between she and Bennett (beyond the purported *de facto* head of household or attorney for the family theory), and the court will not speculate as to whether the independent tort of NIED *could have* been established if she had.[9] As such, the Defendants' motion to dismiss Count V is GRANTED.

    F.  Count VI:    Breach of Fiduciary Duty: Bennett as Attorney for Cassandra

As discussed above,[10] the Plaintiff is not entitled to relief under a theory that the Defendants breached a fiduciary duty to the Plaintiff because no attorney-client relationship existed between the Defendant and the Plaintiff. Therefore the Defendants' motion to dismiss Count VI is GRANTED.

---

[9] The court further notes that the NIED is likely surplusage in light of the IIED and defamation claims as there can only be one recovery for the same loss or damages. *Theriault v. Swan,* 558 A.2d 369, 372 (Me. 1989).

[10] *See* discussion *supra* Part III.C pertaining to Count III.

G.  Count VII:  Breach of Fiduciary Duty: Bennett as *De Facto* Head of Household

As discussed above,[11] the Plaintiff is not entitled to relief under a theory that Bennett breached a fiduciary duty to the Plaintiff as a *de facto* head of household, therefore the Defendants' motion to dismiss Count VII is GRANTED.

H.  Count VIII:  False Imprisonment

False imprisonment involves the unlawful detention or restraint of an individual against his will. *Nadeau v. State*, 395 A.2d 107, 116 (Me. 1978) (citing *Palmer v. Maine Central R.R. Co.*, 92 Me. 399, 42 A. 800 (1899)). To prevail on a claim for false imprisonment, a plaintiff must adequately plead the following elements: (1) an act(s) intending to confine another within boundaries fixed by the actor; (2) such act(s) directly or indirectly results in confinement of the other; and (3) the other is conscious of the confinement or is harmed thereby. RESTATEMENT (SECOND) OF TORTS § 35 (1965).

Here, Liberty's complaint contains no factual representations that her confinement to Spring Harbor Hospital was illegal beyond the claim that Bennett "planned and orchestrated" her confinement by making false allegations and misrepresentations to the police and health care officials regarding her mental health and stability. (Compl. ¶¶ 145-149.) As there are statutory rules and guidelines that healthcare officials must follow prior to a minor's admittance into a treatment or evaluation program, the court finds that the Plaintiff's assertion that Bennett instigated and mandated her stay in Spring Harbor Hospital unsupported by the facts in light of the approval of the Plaintiff's mother. *See* 34-B M.R.S.A. § 3831(3) ("Any person under 18 years of age must have the consent of the person's parent or guardian" prior to the admittance into a psychiatric hospital); *see*

---

[11] *See* discussion *supra* Part III.D pertaining to Count IV.

*also Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 217 (1st Cir. 2008) (stating that a court is not "required to accept as true . . . each and every unsupported, subjective, conclusory or imaginative statement made by a party") (Pl.'s Opp'n to M. Dismiss at 6.).

The court also disagrees with Liberty's reliance on *Whittaker v. Sandford*, as support for her contention that her mother was the servant of Bennett who "institutionalized [her] against her will." 110 Me. 77, 85 A.2d 399 (1912); (Pl.'s Opp. to Mot. Dismiss at 16.) In *Whittaker*, a false imprisonment verdict was upheld when the Defendant husband and member of a religious group refused to allow the plaintiff and her children to leave a ship. The court does not find the facts of *Whittaker* analogous to the facts here. In order for Spring Harbor Hospital to admit the Plaintiff, her mother, acting as her legal guardian, *had* to approve the medical treatment and evaluation of the Plaintiff, which she did. *See* 34-B M.R.S.A. § 3831(3); (Pl.'s Opp'n to M. Dismiss at 6.). The court concludes, after considering the facts in a light most favorable to the Plaintiff, that the Plaintiff has failed to plead adequate facts establishing a claim of false imprisonment, and as such, Defendants' Motion to Dismiss Count VIII is GRANTED.

I. Count IX: Defamation

In order to survive a motion to dismiss, a complaint for defamation must allege the following elements: a false and defamatory statement concerning another; an unprivileged publication to a third party; fault amounting at least to negligence on the part of the publisher; and actionability irrespective of special harm or the existence of special harm caused by the publication. *Cole v. Chandler*, 2000 ME 104, ¶ 5, 752 A.2d 1189, 1193; *Vahlsing Christnia Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985).

The Plaintiff's complaint states that Bennett negligently or intentionally made unprivileged, false, and defamatory statements to various third parties in her community. She also alleges that these defamatory statements caused various damages including, but not limited to, contempt and public hatred in her community, harm to her reputation, emotional and psychological distress, and educational interruption.[12] (Pl.'s Compl. ¶¶ 150-154.)

For the purposes of this motion, the court accepts as true the factual allegations of the complaint and concludes that it sufficiently alleges the elements of defamation. In this instance the Court has construed the facts liberally in favor of the Plaintiff, as required at this stage of the proceedings, and as such, the Defendants' motion to dismiss Count IX is DENIED.

<u>CONCLUSION</u>

The clerk will make the following entries as the Decision and Order of the court:

A. Defendants' Special Motion to Dismiss is DENIED;

B. Defendants' Motion to Dismiss is GRANTED as to the following counts:

   1. Count II:     Negligence: Defendants as Plaintiff's Attorney
   2. Count III:    Negligence: Defendants' Fiduciary Duty to Plaintiff in His Capacity as Attorney for Her Mother
   3. Count IV:     Negligence: Defendant as *De Facto* Head of Household
   4. Count V:      Negligent Infliction of Emotional Distress
   5. Count VI:     Breach of Fiduciary Duty: Defendants as Attorney for Plaintiff
   6. Count VII:    Breach of Fiduciary Duty: Defendant as *De Facto* Head of Household
   7. Count VIII:   False Imprisonment

8. Defendants' Motion to Dismiss is DENIED as to the following counts:

   1. Count I:      Intentional Infliction of Emotional Distress

---

[12] The court does not consider claims for damages due to false imprisonment or from the prohibition on communication with Scott Liberty.

17

2.  Count IX:    Defamation


DATED: January 19, 2010          _____
                                                Joyce A. Wheeler, Justice



**STATE OF MAINE**
CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

JOHN WHITMAN ESQ
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME 04112-9545



**STATE OF MAINE**
CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

THOMAS HALLETT ESQ
PO BOX 7508
PORTLAND ME 04112

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-09-459
JAW - Cum - 12/20/2011

CASSANDRA LIBERTY,

    Plaintiff

                          ORDER

v.

STATE OF MAINE
Cumberland, ss. Clerk's Office

DEC 20 2011

RECEIVED

JEFFREY BENNETT and
THE BENNETT LAW FIRM, P.A.,
    Defendants.

This matter comes before the court on plaintiff's motion to disqualify Martha Gaythwaite's representation of Jeffrey Bennett in this case. The defendant opposes plaintiff's motion.

Plaintiff filed a motion to disqualify with an incorporated memorandum of law and a supplemental memorandum in support of its motion for disqualification. Plaintiff's motion relies chiefly on the arguments made in the motion filed by Scott Liberty in his case against Jeffrey Bennett even though the parties and issues are quite different in this case. Although those arguments were initially persuasive, the court eventually denied his request to disqualify Ms. Gaythwaite. See *Scott Liberty v. Jeffrey Bennett*, PORSC-CV-03-421/PORSC-CV-05-66 (Marden, J. Oct. 28, 2011). In that case, Scott Liberty claimed that Ms. Gaythwaite represented his former attorney in a professional negligence action that he brought against his former attorney and therefore had privileged communications that disqualifies her from representing the defendant in his case.

Ms. Gaywaite never represented Cassandra Liberty yet she argues that her situation is similar to her father's and Ms. Gaythwaite should be disqualified in the instant case. In this case, Cassandra Liberty challenges many of the court orders entered in the divorce action between her father and her mother. Cassandra complains that Bennett, both in his representation of her mother and in his personal relationship with her mother and her siblings, acted in such way that resulted in the harm alleged in her complaint which originally sounded in nine counts.[1] The court in ruling on an earlier filed motion to dismiss concluded that it would *not* permit Cassandra to relitigate the numerous judicial decisions relating to the dispute between her parents. The court dismissed all but count I alleging intentional infliction of emotional distress and Count IX[2] alleging defamation. The remaining counts are not similar at all to her father's claims in his case. Her claims are personal to her.

## STANDARD

On a motion to disqualify an attorney, the Law Court has said disqualification is appropriate only when the moving party produces evidence supporting two findings.

> First, . . . [a] party moving to disqualify an attorney has the burden of demonstrating more than mere speculation that an ethics violation has occurred; she must establish in the record that continued representation of the nonmoving

---

[1] The facts and allegations in the complaint state, but are not limited to, the following: Bennett manipulated both Darlene Copp and the legal system by lying and falsely accusing Scott Liberty of various transgressions which resulted in a destruction of the parent/child relationship between the Plaintiff and her father; Bennett, while representing Darlene Copp, was a constant fixture in the Plaintiff's household who took control of the day-to-day lives of the family; his presence became controlling to the extent that he threatened to foreclose a mortgage held in the Defendants' name if Copp and her children did not comply with his dictates; Bennett disparaged Plaintiff by screaming at her, calling her names, and telling lies about Plaintiff to other people in her community; he searched Plaintiff's room and removed items that he had given her; and he thwarted Plaintiff's emancipation efforts by trying to force her to lie to the police about communications with Scott Liberty and by telling attorneys not to represent her. The complaint further states that the Defendants' actions have caused the Plaintiff serious damages.

[2] The court notes that Count IX, defamation, is mislabeled in the complaint as Count X. The court hereinafter refers to the count as Count IX.

2

party by that party's chosen attorney results in an affirmative violation of a particular ethical rule. Further, even if an ethical violation is established, whether disqualification of that attorney may be imputed to the attorney's entire law firm depends on which ethical violation is found to have occurred. Second, we require a showing that continued representation by the attorney would result in actual prejudice to the party seeking that attorney's disqualification. . . the moving party must point to the specific, identifiable harm she will suffer in the litigation by opposing counsel's continued representation. Indeed, to allow disqualification with proof of anything less than such actual prejudice would be to invite movants to employ this obvious vehicle for abuse.

*Morin v. Me. Educ. Ass'n*, 2010 ME 36, ¶¶ 9, 10, 993 A. 2d 1097, 1100 (quotation marks and citations omitted).

Plaintiff cannot meet her burden of proving a violation of an ethical rule or prejudice. Nor can plaintiff establish a substantial relationship between this case and the prior litigation involving her father. Plaintiff was not part of the prior litigation involving her father. Even if the court were to find that Ms. Gaythwaite's representation of her father's former attorney somehow triggers consideration of disqualification in this case, the court is aware that Ms. Gaythwaite was not disqualified in *Scott Liberty v. Bennett*. Moreover, Ms. Gaythwaite never represented Cassandra, only her father's prior counsel who was the subject of a lawsuit filed by Mr. Liberty.

The entry is:

Plaintiff's motion to disqualify Defendant's attorney is DENIED.

The clerk shall enter this order on the docket pursuant to M.R.Civ.P. 79(a).

December 19, 2011

Joyce A. Wheeler, Justice

STATE OF MAINE
Cumberland, ss, Clerk's Office

DEC 20 2011

RECEIVED

3

Plaintiff-Thomas Hallett Esq

Defendant Jeffrey Bennett-Martha Gaythwaite
 Esq

Defendant The Bennett Law Firm-Elizabeth
 Germani Esq/Tracy Hill Esq