Hillsborough-southern judicial district
Nos. 93-825
      95-380

THE STATE OF NEW HAMPSHIRE

v.

STEVEN GORDON

April 8, 1997

*Jeffrey R. Howard*, attorney general (*Cynthia L. White*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

*Steven B. Gordon*, by brief, *pro se.*

BRODERICK, J. The defendant, Steven Gordon, was convicted of aggravated felonious sexual assault after a jury trial in Superior Court (*Dalianis*, J.). *See* RSA 632-A:2 (1986) (amended 1992). In separate but consolidated appeals, the defendant argues that the trial court erred in admitting into evidence allegedly privileged statements he made to an attorney instructor and in failing to recall a juror to determine whether her independent legal research during deliberations affected the verdict. We affirm.

The testimony at trial revealed the following. In the fall of 1991, the victim, an administrator and teacher at New Hampshire Technical College in Nashua, began a consensual sexual relationship with the defendant, a student at the college. In July 1992, the victim informed the defendant that their relationship was over. In response, the defendant came to the victim's home and, after promising that he just wanted to talk to her, sexually assaulted her.

In September 1992, the defendant telephoned Judith Parys, a lawyer and his paralegal instructor at the college, and, crying, told her that he had had a relationship with the victim and "that things had gone wrong and that it was a mess." He told Parys that he was afraid the victim would have him removed from the college. Later the same day, the defendant called Parys again. He told her that "he had called [the victim] and, much to his surprise, that she had agreed to talk to him on the phone, . . . and that he didn't have to tie her up."

In October 1992, the defendant, who was shaking and looked like he had been crying, approached Parys after she finished teaching a class and told her that he had looked up the definition of rape in the New Hampshire statutes. He said that, based on the definition, "he was sure that he had raped [the victim] in the past."

The defendant was later charged with four counts of aggravated felonious sexual assault and one count of attempted aggravated felonious sexual assault. *See* RSA 632-A:2; RSA 629:1 (1986). Before trial, he filed a motion *in limine* to bar Parys from testifying against him, asserting that his communications with her were protected by the attorney-client privilege. The trial court denied the motion. The defendant was convicted on one count of aggravated felonious sexual assault.

Approximately one year after trial, the defendant's trial counsel met one of the jurors who told him that she had looked up the definition of aggravated felonious sexual assault in the New Hampshire Criminal Code during jury deliberations. Consequently, the defendant filed a motion for new trial, seeking to recall the juror to determine the effect her independent research had on the verdict. The trial court denied the motion.

The defendant first argues that the trial court erred in denying his motion to exclude Parys' testimony based on the attorney-client privilege. Although we have not previously stated the standard of review, it is that of any evidentiary ruling: The determination of the applicability of the attorney-client privilege rests in the sound discretion of the trial court. *Cf. Key Bank of Maine v. Latshaw*, 137 N.H. 665, 673, 633 A.2d 952, 957 (1993) (marital privilege).

■ ■ It is generally recognized that "[a]n attorney-client relationship is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *McCabe v. Arcidy*, 138 N.H. 20, 25, 635 A.2d 446, 449 (1993) (quotation omitted). Here, the burden of proving the existence of an attorney-client relationship lies with the defendant. *Id.* The defendant conceded at oral argument that he sought no legal advice in the September 1992 phone conversations. Consequently, we need look only at the October 1992 conversation at the college to determine whether an attorney-client relationship was established and, hence, whether the attorney-client privilege applies to that conversation.

At the hearing on the motion *in limine*, the trial court heard conflicting testimony on the question of whether the defendant's conversation with Parys at the college established an attorney-client relationship. The defendant maintained that Parys told him "to go look in the R.S.A.'s" and, when he returned, she advised him to "back off and give [the victim] her space." Additionally, he contended that Parys offered to "make some phone calls and get back to [him]."

Parys' version of the conversation was quite different, however. She contended that the defendant informed her that "he had gone to the R.S.A.'s in the law library, had looked up the definition of 'rape,' and believed that he had raped [the victim]." Rather than offering legal advice, Parys testified that because of the defendant's "rambling," she "didn't have a chance to get a word in edgewise."

The credibility of witnesses is a factual determination within the sound discretion of the trial court. *State v. Briere*, 138 N.H. 617, 620,

644 A.2d 551, 554 (1994). "[U]nless we find that no reasonable person could have come to the same conclusion," we defer to the trial court's credibility determination. *State v. Crotty*, 134 N.H. 706, 711, 597 A.2d 1078, 1082 (1991) (quotation omitted).

The trial court's determination that the defendant "did not . . . seek advice from Parys in her legal capacity" is adequately supported by the record. Parys testified that the defendant sought "absolutely no legal advice" and that she gave none. Additionally, she testified that she informed her classes — some of which the defendant attended — that she did not give legal advice and that she believed to do so could violate the Rules of Professional Conduct.

Even the defendant's own testimony does not support his argument that he sought legal advice from Parys in her capacity as an attorney. At the hearing on the motion *in limine*, the defendant read into the record his testimony from an earlier proceeding that when he spoke to Parys, he thought he was "talking to somebody in confidence. You tell somebody that you trust or that you're friendly with things that you wouldn't just openly stand out there and say . . . ." Speaking in confidence is not enough; "where one consults an attorney not as a lawyer but as a friend or as [an] . . . adviser . . ., the consultation is not professional nor the statement privileged." K. BROUN ET AL., MCCORMICK ON EVIDENCE § 88, at 322-24 (J. Strong ed., 4th ed. 1992).

Moreover, the defendant's conduct at two earlier proceedings, which the trial court considered in its ruling, does not support the existence of the privilege he now seeks to invoke. Prior to the defendant's trial, Parys twice testified — at a hearing on a domestic violence petition filed by the victim against the defendant and at a judicial review board hearing at the college — about the conversations she had with the defendant in September and October 1992. According to the defendant's testimony at the hearing on his motion *in limine*, at the domestic violence hearing, Parys indicated that she did not represent either party; the defendant apparently did not object. At the judicial review hearing, the defendant remarked about Parys: "I realize she's an attorney, but she's here as a witness. If she wants to play attorney, then she should represent somebody."

■ "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . ." N.H. R. EV. 502(b). Because the defendant never established an attorney-client relationship with Parys, however, he cannot now assert the privilege as a shield against the admission of Parys' testimony.

Nor did the trial court err in denying the defendant's request to recall a juror. "Neither party has the legal right to bring the jurors before the trial judge and have them orally examined. This is a matter within the sound discretion of the trial court." *Bunnell v. Lucas*, 126 N.H. 663, 669, 495 A.2d 1282, 1286 (1985) (quotations, ellipsis, and citation omitted).

In his affidavit supporting the motion for new trial, defense counsel alleged that "during the weekend layover in jury deliberations [one of the jurors] had gone to a library to look up the New Hampshire rape statute." Defense counsel further stated:

> 8. I do not recall [the juror] saying anything to indicate that she had gone to the library with any other juror, or that she had divulged either the fact of her research or the results thereof to any other juror during the ensuing deliberations. Rather, my recollection is that she explained that she went to the library alone and did not disclose this to any other juror.

> 9. I have no specific recollection that [the juror] indicated that her library research was the cause of her decision to vote guilty rather than not-guilty during the ensuing deliberations. Rather, my recollection is that she explained her decision to vote guilty was due to other testimony she had considered.

Because the proper inquiry is "whether the juror's misconduct produced the verdict, and not whether [she] misbehaved during the trial," *Caldwell v. Yeatman*, 91 N.H. 150, 156, 15 A.2d 252, 256 (1940) (quotation omitted), we find no abuse of the trial court's broad discretion. *See Bunnell*, 126 N.H. at 669, 495 A.2d at 1286.

*Affirmed.*

All concurred.