Rockingham
Nos. 2008-441
 2008-814

THE STATE OF NEW HAMPSHIRE

v.

ANDREW SANTIAGO

Argued: November 4, 2009
Opinion Issued: March 10, 2010

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Paul Borchardt*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Andrew Santiago, was found guilty of one count of accomplice to robbery, *see* RSA 636:1 (2007), following a jury trial in Superior Court (*McHugh*, J.). He appeals, arguing that the trial court erred in denying his proposed *voir dire* question and his motion to reconvene the jury. We affirm.

The record supports the following. On July 18, 2007, Ricky Menczywor hosted a party at his parents' home in Candia. There were approximately twenty-five people at the party, including Donald Sullivan, his girlfriend, Courtney Coppola, Danielle Morrissey and the defendant.

After midnight, Sullivan and Coppola decided to leave. Coppola said goodbye to friends inside the house, while Sullivan went outside to thank Menczywor for hosting the party. Sullivan found Menczywor on the back deck of the house with the defendant. As Sullivan began walking away, the defendant punched him in the face and Menczywor pointed a rifle at Sullivan's head. The defendant then took Sullivan's gold chain, earrings, and money from his wallet. The defendant had difficulty taking Sullivan's watch, so Menczywor handed the gun to the defendant and took the watch. The defendant then returned the gun to Menczywor.

After the robbery, Sullivan, Coppola and Morrissey left, and Morrissey called the police. About ten state and local police officers arrived at Menczywor's home. Several partygoers fled into the woods behind the house, while others remained inside the home with the doors locked. After forcing their way into the home, the police conducted a protective sweep that revealed two rifles on the floor near a closet in the back of the house.

One of the rifles was loaded. The police found four people inside the home, including the defendant, who was arrested for being a minor in possession of alcohol.

During the investigation, Sullivan told the police that a "Spanish" male wearing a red shirt, with a tattoo of the word "Boogie" on his lower forearm, had punched him. The defendant, a Hispanic man, had such a tattoo on his arm. He was wearing a red shirt when the police found him in the basement.

The defendant was indicted on one count of robbery, accomplice to robbery, and simple assault. *See* RSA 636:1; RSA 626:8, III; RSA 631:2-a, I(a). Before trial, the defendant submitted five proposed *voir dire* questions to the trial court, which the court considered in an unrecorded chambers conference. The record does not reflect any further discussion of the request, but the trial court asked the venire four of the five questions. The court did not pose the following question: "Andrew Santiago is Hispanic. He is originally from Puerto Rico and is therefore a United States citizen. Do you feel that because he is originally from Puerto Rico that this would affect your ability to be impartial?" The jury acquitted the defendant on the robbery and simple assault charges, but convicted him of accomplice to robbery. The defendant appealed.

After the trial, a defense investigator sent the jurors a questionnaire. One question asked, "Was the race of the defendant a factor in your verdict?" One juror responded, "Color made a differ[e]nce." Based upon this response, the defendant moved for a new trial, or, in the alternative, to reconvene the jury. The trial court denied the motion, and the defendant also appealed that decision. We consolidated the two appeals.

*I. Voir Dire*

The defendant first argues that the trial court's decision not to pose a question about racial bias during juror *voir dire* violated his state and federal constitutional rights to be tried by an impartial jury. *See* N.H. CONST. pt. I, art. 35; U.S. CONST. amend. VI. The State counters that this issue was not preserved for appeal because the defendant did not raise these constitutional arguments in the trial court. We agree.

■■ To preserve an issue for appellate review, a defendant must make a contemporaneous objection that explicitly states the specific grounds of objection. *See State v. Ericson*, 159 N.H. 379, 386 (2009) (citations omitted). Here, the trial court considered the defendant's proposed *voir dire* questions in an unrecorded chambers conference and the defendant did not object on the record to the court's decision not to ask one of the questions. Where a chambers conference is unrecorded and the record is not part of

the case before us, "we cannot speculate as to what occurred." *Carbone v. Tierney*, 151 N.H. 521, 536 (2004). The fact that there was an unrecorded chambers conference does not "relieve the defendant of his burden to present an adequate record" on appeal. *State v. Bergmann*, 135 N.H. 97, 100 (1991).

We have reviewed issues where there was an unrecorded conference and the parties later reconstructed the record to reflect their and the trial court's understanding of what occurred. *See State v. Parra*, 135 N.H. 306, 308-09 (1992) (finding issue preserved where State and trial court effectively ratified representation by defense counsel that he had previously made specific argument in off-the-record conference). However, no such reconstruction occurred in this case.

■ The defendant argues that his motion for a new trial adequately preserved his challenge to the trial court's failure to ask his proposed *voir dire* question. The defendant's motion, however, only mentions the proposed *voir dire* questions in passing. The only issue expressly raised in the motion is a request for a new trial, or, in the alternative, for the trial court to reconvene the jury. He does not separately raise the issue of the *voir dire* question. Moreover, it is too late to raise such an issue for the first time in a motion for a new trial because the trial court cannot correct any potential error by asking the *voir dire* question at that point. Therefore, this issue is not preserved.

*II. Alleged Juror Misconduct*

We next address the defendant's argument that the trial court erred in denying his motion to reconvene the jury. The defendant contends that the juror's response to the questionnaire that "Color made a differ[e]nce" required the trial court to reconvene the jury to see if the verdict was tainted by racial bias. First, he argues that because the trial court found two plausible explanations for the juror's comment — as either evidence of prejudice or that the defendant's identity was in issue — it should have reconvened the jury to determine which interpretation was correct. Second, he argues the trial court applied an improperly high standard to the defendant's request to reconvene the jury when it found that "case law suggests that the reconvening of a jury is a last resort for a trial judge."

The State argues that the defendant's identification was the most contested issue at trial and points out that the defendant was identified by his race five times during the trial. The State contends that because the defendant's identity was based in large part upon the color of his skin, there was a rational explanation for the juror's response. The State further

argues the juror's responses were vague and unresponsive and the trial court was correct in denying the defendant's motion to reconvene the jury.

■ "Neither party has the legal right to bring the jurors before the trial judge and have them orally examined." *Bunnell v. Lucas*, 126 N.H. 663, 669 (1985) (quotation, brackets and ellipsis omitted). "This is a matter within the sound discretion of the trial court," *State v. Gordon*, 141 N.H. 703, 707 (1997) (quotation omitted), and the trial court's discretion in this respect is broad. *Bothwick v. LaBelle*, 115 N.H. 279, 281 (1975). The trial court may reconvene and interrogate a jury "whenever [it] is of the opinion that the jury may have made some mistake . . . which produced their verdict." *Caldwell v. Yeatman*, 91 N.H. 150, 155 (1940). We review the trial court's decision under an unsustainable exercise of discretion standard, and reverse only if the ruling is clearly untenable or unreasonable to the prejudice of a party's case. *See State v. Low*, 138 N.H. 86, 88 (1993); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). The question before us, then, is whether the defendant's allegation raised an issue of jury misconduct such that the court unsustainably exercised its discretion when it declined to explore the matter further by recalling the jurors and subjecting them to oral examination. *Caldwell*, 91 N.H. at 155. Based upon the record before us, we hold that the trial court's denial of the defendant's motion is neither untenable nor unreasonable.

In support of his motion for a new trial, the defendant submitted a copy of the juror questionnaire and the juror's responses. They are as follows:

1. Was this the first time you've served on a jury?

Yes

2. What led you to convict Mr. Santiago of robbery?

It was clear that some of the people saw the same thing twice and his tatoo [*sic*]

3. Did any other jurors do or say anything that would have influenced your decision? If so, what?

No

4. What was the most important piece of evidence in this case? What was the most important testimony in this case?

The evidence of his robbery

5. Was the race of the defendant a factor in your verdict?

Color made a differ[e]nce

6. Did the fact that the defendant is Hispanic come up in deliberations?

She was very good

7. What was your impression of the defense attorney?

Okay

8. What was your impression of the prosecuting attorney?

Afford [*sic*]

9. What was your impression of the defendant?

No

10. Was there anything the state or the defense could have added (i.e. information; evidence; view) to the trial process, which might have assisted you in your verdict?

More evidence

■ ■ Viewed in isolation, the juror's response that "Color made a differ[e]nce" is troublesome. *See State v. Johnson*, 630 N.W.2d 79, 83 (S.D. 2001) ("When racial considerations are injected into jury deliberations, the Sixth Amendment guarantee of a fair trial is defeated." (quotation omitted)). In light of the other questions and answers, however, it is not. For example, when asked, "Did the fact that the defendant is Hispanic come up in deliberations?", the juror responded, "She was very good." When asked, "What was your impression of the defendant?", the response was "No." We agree with the trial court that these answers are "completely unresponsive" to the questions asked. We thus agree with the trial court that because "the Defendant's race was perhaps the most important part of this case, the juror's answer is entirely reasonable." Given the ambiguity of the juror's answers, we cannot conclude that the trial court unsustainably exercised its discretion by deciding not to reconvene the jury.

Our conclusion is supported by other cases where we have upheld a trial court's decision to reconvene the jury. *See, e.g., Drop Anchor Realty Trust v. Hartford Fire Ins. Co.*, 126 N.H. 674, 683 (1985) (upholding reconvening of jury where juror told defense attorney jury improperly calculated amount of damages); *Bunnell*, 126 N.H. at 665, 669 (finding reconvening jury proper where juror informed plaintiff's counsel jury reached decision by averaging their respective determinations of fault and foreman failed to ask whether each agreed with result); *Bothwick*, 115 N.H. at 281 (affirming trial court's decision to reconvene jury where jury foreman indicated jury miscalculated damages). The conduct here does not rise to the level of these cases. In those situations a juror told counsel about specific errors the jury made. Here, however, the evidence of potential juror misconduct was ambiguous and susceptible to an interpretation consistent with the evidence at trial.

In *State v. Gordon*, 141 N.H. 703 (1997), we affirmed the trial court's decision not to reconvene the jury when, during the weekend layover in jury deliberations, a juror went to the library to research the New Hampshire rape statute. *Id.* at 707. The affidavit submitted by defense counsel indicated the juror did not disclose this to any other jurors, and that she voted guilty based upon the other evidence she considered. *Id.* This case is analogous to *Gordon* in that the defendant alleged no independent misconduct of the juror that affected the verdict in any significant way. When asked to identify "the most important piece of evidence in this case," the juror responded, "The evidence of his robbery" — an answer devoid of any reference to the defendant's race. Here, the juror voted guilty not based upon the defendant's race, but based upon the other evidence the juror considered.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, HICKS and CONBOY, JJ., concurred.