NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2017-0387

THE STATE OF NEW HAMPSHIRE

v.

FOAD AFSHAR

Argued:  June 27, 2018
Opinion Issued:  October 12, 2018

Gordon J. MacDonald, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.

Lothstein Guerriero, PLLC, of Concord (Theodore M. Lothstein on the brief and orally), for the defendant.

LYNN, C.J.  The State appeals an order of the Superior Court (Nicolosi, J.) granting the defendant, Foad Afshar, a new trial following his convictions on one count of simple assault, see RSA 631:2-a (2016), two counts of unlawful mental health practice, see RSA 330-A:23 (2017), and one count of aggravated felonious sexual assault, see RSA 632-A:2, II (Supp. 2017).  On appeal, the State argues that the trial court unsustainably exercised its discretion when, during a post-verdict hearing on the defendant's motion for a new trial, it failed to apply the proper legal analysis in evaluating the potential biases of two jurors.  We affirm and remand.

The following facts are derived from the record. The defendant was convicted by a jury of simple assault and aggravated felonious sexual assault based on charges that he touched the genitals of his 12-year-old client during a therapy session. The defendant was also convicted on two counts of unlawful mental health practice based on charges that he had failed to renew his mental health counselor's license at the time he was treating the victim.

Following his convictions, an attorney representing the defendant post-trial learned that two of the jurors at his trial, Jurors 6 and 14, had failed to disclose on their juror questionnaires or during jury selection that they had been child victims of sexual assault. The defendant moved for a new trial, contending that he was denied his right to a fair and impartial jury because Jurors 6 and 14 would have been excused during <u>voir</u> <u>dire</u> had their experiences been revealed to the court. The trial court held a hearing on the defendant's motion, at which Jurors 6 and 14 testified. After the hearing, the trial court issued an order granting the defendant a new trial. The State moved for reconsideration, which the trial court denied, and this appeal followed.

Prior to jury selection, the potential jurors filled out questionnaires that included the following question: "Have you or has any member of your family been the victim of a crime?" Both Jurors 6 and 14 answered, "No." The trial court began jury selection by informing the jury pool of the charges against the defendant. The court next instructed that it would be reading a list of questions, and that if a potential juror's name was selected and that individual answered "yes" to any of the questions asked by the court, that person would need to come up to the bench to discuss his or her response. The trial court explained that the microphones at the bench would be turned off, and that if there was a sensitive matter that an individual did not want to discuss in the presence of the lawyers and the defendant, a request to speak privately with the judge would be obliged.

When reading its list of questions, the trial court asked:

Have you or a close member of your family or a close friend ever been a victim of a crime?

The court elaborated: "And when I ask that question, I don't mean whether somebody has been prosecuted or identified or charged, I just mean have you ever been victimized." When their names were called, Jurors 6 and 14 stated that they had not answered "yes" to any of the <u>voir</u> <u>dire</u> questions, and said that they could be fair and impartial. They were then seated on the jury.

Following the parties' presentation of the evidence, the jury began its deliberations. While deliberating, a young male juror expressed concern about

his ability to determine whether the defendant was capable of committing the offenses charged. In response, Juror 14 shared her view that there was no profile of an offender, and that she herself had been a victim of childhood sexual assault. Juror 6, who had been elected as the foreperson of the jury, then revealed that he also had been sexually assaulted as a child. The jury thereafter returned a guilty verdict.

At the post-verdict hearing on the defendant's motion for a new trial, Juror 6 confirmed that he had been sexually assaulted by a babysitter when he was approximately five or six years old. The incident ended when the babysitter's mother returned home. While Juror 6 did not immediately tell anyone about the incident, he asked his mother not to send him to that babysitter again and she granted his request. Juror 6 testified that he had not remembered the sexual assault until approximately 50 years later when the perpetrator came into his business establishment. Upon seeing the perpetrator, Juror 6 recalled the event and became disabled to the point that he lost his ability to breathe. He could not function for several days after the encounter. When questioned regarding the cause of his distress, Juror 6 stated that he was upset about his ability to bury a memory rather than by the assault itself, testimony the trial court ultimately found unconvincing.

Juror 6 was also asked why he had not responded "yes" to the court's question whether he had been a victim of a crime. He stated that he did not identify as a "victim," as that was "not [his] lifestyle." The trial court found that, in giving this response, Juror 6 "seemed to have difficulty with the term ['victim'] even applying to him, as though it would be some kind of unacceptable vulnerability." The court also found that, during a post-trial investigation into juror bias, Juror 6 had told the State's investigator that, at the time of voir dire, he did not believe the court's question applied to him because he measured a crime by an arrest and conviction, something that had not occurred after his sexual assault. The court noted, however, that Juror 6 had also been a victim of various other crimes that he did not disclose during jury selection, one of which had resulted in a conviction. The court found that an employee of a business owned by Juror 6 had once stolen a company vehicle and burned a hole in a safe, resulting in that employee's conviction and jail sentence. When pressed on this inconsistency, Juror 6 suggested that he was not the victim, but rather the victim was the company that he owned and operated. During the hearing, it also came to light that Juror 6 failed to disclose at jury selection that he had many friends in law enforcement.

The trial court noted that, when testifying in regard to his possible biases favoring victims of sexual assault, Juror 6's demeanor was defensive. The court found that a decision by Juror 6 to cooperate with the State post-verdict, but not with the defendant's investigator, was consistent with this "defensive posture." Juror 6 testified that when called for jury selection on another case involving a sexual assault of a girl, he realized he would be unable to sit on

3

that case due to his feelings about his daughter.  The trial court noted, however, that Juror 6 also has a son, and found it unclear why, under the same reasoning, this would not affect his ability to remain neutral.

In granting the defendant a new trial, the court also relied on Juror 6's "actions and communications before, during and after trial."  Pre-trial, Juror 6 had read a book authored by a female sexual assault survivor and begun direct communications with her.  Post-trial, he had contacted the sponsor of proposed sexual assault legislation to express his strong disagreement with the suggested legislative changes, which would require corroboration of an alleged victim's testimony and change the term "victim" to "alleged victim" or "complainant."  Indeed, Juror 6 testified that he viewed himself as "an advocate for people," and the trial court found that his "personal identification with persons who report being victims of sexual assault . . . resulted in at the very least a subjective bias that could not be set aside."

Finally, the trial court emphasized the similarities between the crime the defendant was accused of and the crime perpetrated against Juror 6.  The court found that both victims were young, the assaults were carried out by persons in positions of authority, and both children did not report what happened immediately.

The trial court stated that determination of Juror 14's potential bias was "a much closer call."  While the court "absolutely believed" Juror 14 was "honest" and intended to be impartial, her "extremely emotional" response to questions at the post-verdict hearing caused the court to doubt her neutrality.  The court concluded that if Juror 14 had been interviewed during voir dire and presented in the same manner, the court would have excused her for cause.  Because the trial court's findings as to Juror 6 are sufficient to sustain its decision to grant a new trial, we have no need to assess its findings as to Juror 14.

II

On appeal, the State argues that the trial court unsustainably exercised its discretion when it used "hindsight," or additional information it uncovered at the post-verdict hearing, to determine whether it would have excused Jurors 6 and 14 for cause at jury selection, essentially "recreat[ing] the voir dire process."  The State asserts that the trial court should have applied a test analogous to that adopted by the United States Supreme Court in McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548 (1984).  McDonough requires the appealing party to "first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause."  Id. at 556.  In response, the defendant contends that the State waived its McDonough argument by relying on a different legal analysis before the trial

4

court.  See State v. Santiago, 159 N.H. 753, 757 (2010) (stating that "[t]he trial court may reconvene and interrogate a jury whenever it is of the opinion that the jury may have made some mistake which produced their verdict" (quotation, brackets, and ellipses omitted)).  However, even assuming without deciding that McDonough provides the applicable analytical framework, we conclude that the trial court sustainably exercised its discretion in finding that Juror 6 was not impartial.

It is a fundamental precept of our system of justice that a defendant has the right to be tried by a fair and impartial jury.  State v. Addison, 161 N.H. 300, 303 (2010); see N.H. CONST. pt. I, art. 35.  Generally, a juror is presumed to be impartial.  State v. Town, 163 N.H. 790, 794 (2012).  When a juror's impartiality is questioned, however, the trial court has a duty to determine whether the juror is indifferent.  Id.; see RSA 500-A:12, I(f) (2010) ("Any juror may be required by the court, on motion of a party in the case to be tried, to answer upon oath if he . . . [i]s prejudiced to any degree regarding the case.").  "If it appears that any juror is not indifferent, he shall be set aside on that trial."  RSA 500-A:12, II (2010).  A juror is considered impartial if the juror can lay aside his or her impression or opinion and render a verdict based on the evidence presented in court.  Town, 163 N.H. at 794; see McDonough, 464 U.S. at 554 ("One touchstone of a fair trial is an impartial trier of fact — a jury capable and willing to decide the case solely on the evidence before it." (quotation omitted)).

The trial court's determination of the impartiality of the jurors selected, essentially a question of demeanor and credibility, is entitled to special deference.  State v. Smart, 136 N.H. 639, 653 (1993).  Once the trial court has made a determination as to the juror's impartiality, we will not disturb that ruling absent an unsustainable exercise of discretion or a finding that the trial court's decision was against the weight of the evidence.  Town, 163 N.H. at 794.

McDonough requires a trial court, in deciding whether to grant a new trial based on the post-verdict discovery of potential juror bias, to determine (1) that a juror responded dishonestly to a voir dire question, and (2) that the dishonest response was influenced by bias or a desire to affect the verdict, thus prejudicing one of the parties and warranting excusal for cause.

A.      Prong One of the McDonough Analysis

As to the first prong of the McDonough analysis, following the post-verdict hearing, the court found that Juror 6's testimony was "not internally consistent or completely logical," and thus not credible.  When asked at the hearing why he had not responded "yes" to the trial court's question whether he had been the victim of a crime, Juror 6 gave various inconsistent answers.  Three aspects of Juror 6's testimony are particularly troubling.

5

First, Juror 6 stated that he did not answer affirmatively to the voir dire question about being a crime victim because he did not think of himself as a victim inasmuch as there had been no investigation or prosecution of the assault against him as a child. He professed to hold this view notwithstanding the trial court's explicit explanation during voir dire that the question was meant to capture victimization without regard to whether the incident resulted in a prosecution or conviction. Yet he also failed to answer that question affirmatively with respect to a crime that had been committed against his business wherein the perpetrator was charged, convicted, and sentenced. And the explanation offered by Juror 6 for not doing so — that he regarded the victim of this crime as being his business rather than himself as the business owner — could readily be found to strain credulity.[1]

Second, prior to his jury service, Juror 6 had read a book written by a female sexual assault survivor and had then initiated communications with her. The trial court's description of this interaction as an example of Juror 6's view of himself as "an advocate for people" also provides support for the trial court's negative assessment of Juror 6's credibility, in that it tends to show that he was especially attuned to the plight of victims of sexual assault and would not likely have regarded himself as a non-victim when asked about the subject during voir dire. Third, when called for jury service in another sexual assault case involving an alleged victim who was a minor, Juror 6 acknowledged that he could not sit on that jury due to his feelings about his daughter; and, as the trial court observed, there appears to be little in the way of logical explanation for how he could have differentiated between the two cases. These findings formed the basis of the court's credibility determination as to Juror 6 and amounted to a sustainable conclusion that Juror 6 had been dishonest when responding to the court's question at voir dire.[2]

---

[1] The State asserts that the defendant has waived any argument that omission of this crime at voir dire may form the basis of Juror 6's dishonesty due to his failure to raise that contention in his motion for a new trial. We do not rely on the trial court's finding for that purpose, however, and instead view this crime as the trial court did — as further evidence of Juror 6's inconsistency in testifying as to his understanding of the term "victim."

[2] The State contends that the trial court's credibility findings merit reversal given the "adversarial" nature of the post-verdict hearing, specifically the juror's subjection to cross-examination by defense counsel and the trial court's decision to hold the hearing in an open courtroom in the presence of the media and the defendant's supporters. We find this argument unpersuasive. At the hearing on the defendant's motion for a new trial, it was defense counsel's burden to produce evidence in support of his position, and thus it follows that he would question the jurors to elicit desired testimony. See Sampson v. United States, 724 F.3d 150, 166 (1st Cir. 2013) ("The party seeking to upset the jury's verdict has the burden of showing the requisite level of bias by a preponderance of the evidence."). With respect to the court's decision to hold the hearing in open court, we have emphasized the value of the right to open courtrooms. See State v. DeCato, 156 N.H. 570, 573–75 (2007). Moreover, we note that the trial court here took precautions to protect the privacy of the witness jurors, explaining, at the post-verdict hearing, that they could step down from the witness box and approach the bench if the questioning became too personal. Even if there may be reasons to depart from the general rule of openness for proceedings of this kind in certain circumstances — an issue we do not decide today — we are not persuaded that the public

The State argues that <u>McDonough</u> requires more than simply a dishonest response on <u>voir dire</u>, but rather an "intentional" dishonest response. In other words, citing case law from other jurisdictions, the State believes <u>McDonough</u> demands a finding that Juror 6 knew he was lying. <u>See, e.g.</u>, <u>Commonwealth v. Amirault</u>, 506 N.E.2d 129, 135 (Mass. 1987) (stating that "as <u>McDonough</u> makes clear, the crucial inquiry is whether the juror's answer was honest; that is, whether the juror was aware that the answer was false"); <u>Maestas v. State</u>, 275 P.3d 74, 85 (Nev. 2012) (stating that "[w]here it is claimed that a juror has answered falsely on <u>voir dire</u> about a matter of potential bias or prejudice, the critical question is whether the juror intentionally concealed bias" (quotation and brackets omitted)). <u>But</u> <u>see</u> <u>State v. Thomas</u>, 830 P.2d 243, 246 (Utah 1992) (acknowledging that some courts have interpreted <u>McDonough</u> to require the juror's awareness that his or her answer is false, but stating that "the better-reasoned approach mandates that a juror's 'honesty' or 'dishonesty' be determined from an objective perspective").

Although we decline to decide whether a finding of intent is required under <u>McDonough</u>, we conclude the trial court made that finding here, and had good reason for doing so. Evidence of Juror 6's intentional dishonesty was found by the trial court when it determined that Juror 6 had, prior to trial, contacted a sexual assault victim after reading a book that she had authored. The trial court described this communication as an example of Juror 6's perception of himself as "an advocate for people," and thus it demonstrated Juror 6's pre-trial interest in advocating for others who had experienced sexual assault. Additional proof of Juror 6's intent to provide a dishonest answer was found by the trial court in its determination that Juror 6 gave contradictory responses as to his understanding of the word "victim." Juror 6's inconsistent answers, along with the trial court's qualification that its question as to being a "victim of a crime" did not mean that someone had been "prosecuted, identified, or charged, it just meant have you ever been victimized," indicate that Juror 6 understood the court's inquiry. Finally, although Juror 6 may have initially repressed his memory of his sexual assault, the trial court found that he had recalled this memory prior to the defendant's trial. <u>Cf.</u> <u>United States v. Edmond</u>, 43 F.3d 472, 473-74 (9th Cir. 1994) (concluding that a new trial was not warranted under <u>McDonough</u> because trial court found that juror was truthful when testifying that, at the time of <u>voir dire</u>, he forgot he had been the victim of an armed robbery). We believe these findings by the trial court support the conclusion that Juror 6 did not offer a mistaken, but honest response at <u>voir dire</u>. <u>See</u> <u>McDonough</u>, 464 U.S. at 555 (stating that a new trial is not warranted where a juror provides a "mistaken, though honest" response).

---

venue of the proceeding here affected the trial court's assessment of Juror 6's credibility.

As to the second prong of the McDonough analysis, the trial court found that Juror 6's dishonest response was influenced by bias and thus formed a valid basis for excusal for cause. The court stated that Juror 6's demeanor, as well as "his actions and communications before, during and after trial," demonstrated "his personal identification with persons who report being victims of sexual assault, which resulted in at the very least a subjective bias that could not be set aside." Juror 6's prejudicial bias was evidenced by his "defensive posture" when asked about his possible biases towards sexual assault victims, and his inclination to communicate with the State rather than the defense team post-verdict.[3] In addition, Juror 6 represented to the court that he viewed himself as "an advocate for people," examples of which occurred before and after trial. Before trial, Juror 6 reached out to a sexual assault victim who had authored a book he read, and, post-trial, Juror 6 contacted the sponsor of proposed sexual assault legislation to express his views against contemplated changes requiring victim-testimony corroboration and substituting the term "victim" with "alleged victim" or "complainant."[4]

Juror 6 also testified at the post-verdict hearing that he would not be able to sit on a sexual assault case involving a girl due to his feelings about his daughter, an admission the trial court found troubling given that Juror 6 has a son as well. In addition, the trial court took into account Juror 6's great distress in encountering the perpetrator of his sexual assault approximately 50 years after the event occurred. Although Juror 6 claimed that his anguish was the result of uncovering a lost memory, the court found this testimony unconvincing. Finally, the trial court emphasized that the crime perpetrated against Juror 6 was substantially similar to the crime the defendant was accused of committing.

Based on these findings, the trial court sustainably exercised its discretion in concluding that Juror 6's dishonest answer at voir dire demonstrated a bias that, if disclosed during jury selection, would have

---

[3] The State asserts that the trial court unsustainably exercised its discretion in finding that Juror 6's refusal to meet with the defense investigator was an indicator of prejudice, arguing that "[a]bsent a court order, nothing requires jurors to discuss their service" with either party. However, the important point is that, despite the absence of an obligation to discuss his service with either party, Juror 6 was willing to do so with representatives of the State, but not with representatives of the defendant. Given the considerable deference owed the trial court, we believe that there was sufficient evidence in the record to warrant the trial court's inference of bias. Town, 163 N.H. at 796 (according the trial court "considerable deference" under the unsustainable exercise of discretion standard).

[4] The State argues that post-trial conduct should not have been considered by the trial court. It was proper for the trial court to consider this conduct as evidence of bias, however, as it was relevant to Juror 6's ongoing desire to "advocate for people," something the court found Juror 6 was involved in even prior to trial. See Sampson, 724 F.3d at 167 (considering juror's lies during post-trial hearing as part of her habitual pattern of dishonesty).

warranted excusal for cause.[5]  In sum, even employing the <u>McDonough</u> analysis, which the State contends must be applied to the circumstances of this case, the defendant prevails.  Accordingly, we affirm the trial court's order granting the defendant a new trial.

<u>Affirmed and remanded</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

---

[5] We realize that indifference or impartiality is not a technical conception, but a state of mind. <u>State v. Weir</u>, 138 N.H. 671, 673 (1994).  With that being said, we caution trial courts in the use of what the State refers to as "armchair psychology."  Although we believe that the trial court here sustainably exercised its discretion in addressing the bias issues in this case, we observe that lasting trauma and its potential side effects are issues best left to mental health professionals, rather than the judiciary.